NORTHERN INDIANA PUBLIC SERVICE COMPANY
*v.* MCCLURE.

[No. 15,970.   Filed January 22, 1940.   Rehearing denied
April 17, 1940.   Transfer denied June 28, 1940.]

*Crumpacker & Friedrich,* of Hammond; and *Ernest M. Hawkins,* of Fowler, for appellant.

*Fraser & Isham,* of Fowler; and *Schuyler C. Dwyer* and *John M. Stinson,* both of Hammond, for appellee.

BRIDWELL, P. J.—Appellee brought this action against appellant to recover damages for personal injuries alleged to have been suffered by him as the result of negligent conduct on the part of appellant, through its servants and employees, in allowing poisonous gas to escape from certain appliances while adjustments were being made thereon, and which appliances were located in the basement of an apartment building occupied in part by appellee as a family residence; it being averred in the complaint that the escaping gas caused appellee to be asphyxiated.

The complaint was answered by a general denial. The cause was tried by a jury, and there was a verdict for appellee in the sum of $16,000.00. Appellant duly filed its motion for a new trial, which was overruled by the court and an exception to said ruling reserved. Judgment on the verdict was rendered, and this appeal thereafter perfected; the sole error assigned being the claimed error in the overruling of said motion.

The causes assigned for a new trial and presented here are that the verdict of the jury is not sustained by sufficient evidence; that such verdict is contrary to law; errors of law in admitting evidence and in excluding offered testimony; error in the giving and in the refusal to give each of certain designated instructions.

It appears from the evidence that the kitchen in the

home occupied by appellee was located on the first floor and directly over the basement of the apartment building wherein was situate the appliances upon which adjustments were being made by the servants of appellant, and from which it is claimed the gas asphyxiating appellee was allowed to escape. On October 4, 1932, appellee, while eating his breakfast in this kitchen, suddenly became unable to talk coherently, and suffered a collapse, which left him in an unconscious condition. He was assisted from the kitchen to the bedroom by his wife; a physician was called, who, after an examination, made a tentative diagnosis of carbon monoxide poisoning. An inhalator furnished by appellant was used while this physician was there, and a slight improvement was noted, but appellee continued in a practically unconscious condition for some time. On the afternoon of this same day another physician, representing appellant, called at the home, examined appellee, and two days later appellee was taken to the hospital upon the advice of this physician, where he (appellee) remained for approximately two weeks. On October 8, 1932, a brother of appellee conferred with a third physician, and requested that he have a consultation with the physician upon whose advice appellee had been transferred to the hospital. Thereupon, this third physician called the other one by telephone, informed him of the request, and it was arranged that he, said third physician, should go ahead on that day and make his own examination of appellee, the other physician not being able to be present at that particular time. This third physician then went to the hospital, and, after taking the history of the case from the wife of appellee, made an examination of appellee for the purpose of diagnosing his ailment. Later, on the same day, he called the other physician by 'phone, and prescribed as treatment

that the patient be given "arsenical and potassium iodide," a recognized treatment for syphilis. This physician did not see the patient again until after he had been removed from the hospital to his home, when he became his attending physician, and continued a treatment of potassium iodide and mercury over "a period of five to six weeks," when such treatment was discontinued. In the "latter part of November, 1932," he took two Wassermann tests of the patient's blood, such tests being recognized tests in determining if syphilis exists, and each of these showed negative; that is, failed to disclose any trace of said disease. In December, 1933, he took a spinal fluid Wassermann test, and this showed negative.

There was also evidence to prove that from the date of the collapse appellee has been permanently disabled, and *one* of the most important controverted questions of fact relates to whether his condition resulted from carbon monoxide poisoning suffered because of negligence of appellant, or was due to third degree or cerebro-spinal syphilis.

Appellee called as a witness the third physician who examined and prescribed treatment for him while in the hospital, and thereafter attended him at his home. By this witness, he proved in detail the condition of appellee; the witness testifying concerning the symptoms, and at great length as to the extent of the ailment, attributing the condition to monoxide gas poisoning. Among other things, this witness, in response to questions asked by appellee during the course of his examination in chief, testified that he had taken two blood Wassermann tests in November, 1932, and a spinal fluid Wassermann test in December, 1933, all of which showed negative. Among other questions, he was asked, "Doctor, in your opinion, is this condition

of the brain about which you testified caused by syphilis?" and answered, "I do not think so." Evidence of another physician who examined appellee in December, 1932, was also introduced by appellee relating to a Wassermann blood test made by him, which the witness testified showed negative, or no syphilis.

Appellant, while presenting its defense, called as a witness the physician upon whose advice appellee was removed to the hospital, and sought to prove by him that while appellee was in the hospital he took a sample of spinal fluid from him and had it subjected to a Wassermann test; that this test showed *positive, four plus,* and he informed the other physician of appellee concerning this fact. This offered evidence was excluded, as was other testimony sought to be elicited concerning treatment given appellee at the hospital, as prescribed by the physician who afterwards attended him at his home, and who had been called into the case by the brother of appellee. The objection to the admission of the offered evidence was on the ground that under our statute (§ 2-1714, clause 4, Burns' 1933), the witness was not competent to testify to the facts sought to be proved.

The statute expressly provides that "physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases," shall not be competent witnesses. Under the terms of this statute, we think it clear that none of the physicians who examined and treated appellee were competent to testify concerning facts discovered through their examination, or during their course of treatment of him, over the objection of appellee, but it is well settled that their incompetency may be waived. In the case of *Schlarb* v.

*Henderson* (1937), 211 Ind. 1, 4 N. E. (2d) 205, our Supreme Court said:

> "The purpose of the statute, and of the common-law rule before the statute, was to secure privacy concerning disease and infirmities and to permit having recourse to the advice and assistance of physicians and surgeons without the danger of publicity concerning such private and intimate affairs. But if the details of such private and intimate affairs are voluntarily disclosed, and relied upon as the basis of an action for damages, the inquiry cannot be limited to the version selected by the plaintiff. Appellee voluntarily made the facts concerning the pathological condition of her tissues an issue. She cannot limit the inquiry to the testimony of the witnesses that she selects. By so opening the question she has waived the protection of the statute which insured her privacy concerning such matters."

In the instant case appellee voluntarily proved by his attending physician his conditon, and, by the testimony of this witness and other supporting medical testimony, sought to establish that such condition was the result of carbon monoxide poisoning, and not of syphilis. As heretofore stated, he offered and introduced evidence in chief concerning certain Wassermann tests of both his blood and spinal fluid and that such tests were negative, failing to show that he was afflicted by syphilis. Having introduced evidence tending to prove that the condition for which he seeks to recover damages is not due to this disease, he waived the right he otherwise would have had under the statute to have the offered evidence excluded. Under the state of the record at the time such evidence was proffered, it should have been heard. Had it been admitted, it might have affected the result, and because of the error committed in excluding it, the motion for a new trial should have been sustained.

Other questions are presented. All of them relate, however, to alleged erroneous rulings assigned by appellant as causes for a new trial. The errors claimed, if made, are of such character that they will not necessarily occur again upon any retrial of the cause. In view of the conclusion reached, we deem it unnecessary to extend this opinion by consideration and discussion of any such claimed errors.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

Curtis, J., not participating.

NOTE.—Reported in 24 N. E. (2d) 788.