## NORTHERN INDIANA PUBLIC SERVICE COMPANY v. McCLURE.

[No. 17,694. Filed October 26, 1948. Rehearing denied December 7, 1948. Transfer denied January 11, 1949.]

*Ernest M. Hawkins,* of Fowler, *Edwin H. Freidrich, Owen W. Crumpacker, Crumpacker & Friedrich,* all of Hammond, attorneys for appellant.

*Richard P. Tinkham, Schuyler C. Dwyer, Tinkham & Tinkham,* all of Hammond, and *William S. Isham, Fraser & Isham,* all of Fowler, attorneys for appellee.

FLANAGAN, J.—This is the second appeal of this case. For the nature of the action involved and the reason for the reversal on the former appeal see *Northern Indiana Public Service Co.* v. *McClure* (1940), 108 Ind. App. 253, 24 N. E. 2d 788.

Retrial to a jury resulted in a verdict and judgment of $40,000. The sole error assigned here is the overruling of appellant's motion for a new trial. All the

questions considered in this opinion are properly presented thereunder.

It is insisted by appellant that the only charge of negligence contained in appellee's complaint is that appellant's employees in adjusting the burner let free gas flow out of the pipes. Appellant says the court erred in permitting evidence that carbon monoxide gas emitted when the gas furnished by it burned during the making of the adjustment and that the court erred in instructing the jury in such manner that it was permitted to consider such evidence.

The language of the complaint containing the charge of negligence is as follows:

"... said defendant by its said servants, then and there had so carelessly and negligently and improperly misadjusted and left said gas conduits and apparatus open and leaking in such a dangerous manner, that the said flowing poisonous gas and gaseous fumes did escape therefrom, etc."

We think appellant seeks to too greatly restrict this charge of negligence. We think that the charge is sufficiently general that appellee could under it properly offer evidence of the leaking and escaping of either flowing gas or gaseous fumes because of negligent adjustment whether it happened during the adjustment or thereafter. It seems to us immaterial whether such gas was the gas or fumes from the gas actually furnished by appellant through the pipes and conduits or whether it was gas or gaseous fumes given off the flame from the gas furnished by appellant when it was lighted from time to time by appellant's employees as a part of the adjustment of the burner.

It is next charged by appellant that there was a failure of proof of negligence and of proximate cause.

The evidence is lengthy and conflicting. But there is ample to support the following facts on the subject of negligence and proximate cause:

Prior to October 4, 1932, appellant had been a man of good health. On that day, after working all night he came home feeling normal, took his daughter to school about 9:00 A. M., returned, sat down in the kitchen for breakfast and a little while later while still so engaged suffered an acute attack of carbon monoxide poisoning. That for a half hour prior to appellee's attack appellant's employees were in the basement below him engaged in adjusting a gas stove to properly burn a new gas that appellant was furnishing its customers. That in the process of making the adjustment they were creating monoxide gas, an odorless gas. That monoxide gas would naturally rise and sift through the cracks into the kitchen.

It seems to us that from these facts the jury could properly infer that appellee's attack of acute monoxide poisoning was brought about by breathing the carbon monoxide gas that appellant's employees were creating in the basement and that if they were creating quantities of poisonous gas sufficient to bring about injury to appellee and letting it escape to his kitchen, they were guilty of negligence.

Finally, appellant says the verdict is excessive. There is evidence that at the time of the attack on October 4, 1932, appellee was a normal, healthy man, earning about $200 per month as a refrigerator engineer with ten men under him; that the acute attack of carbon monoxide poisoning caused an injury to his central nervous system from which he will never completely recover. He did no work for which he was paid from October 4, 1932 until 1944. He then tried

common labor twice, for periods of two weeks and three months but had to quit. After the injury he developed an impediment in his speech and because of this was unable to testify twice when this case was tried. He has not been able and probably will not ever be able to do the kind of work he did before his injury.

In view of this evidence we cannot say that the damages awarded by the jury are so large as to indicate prejudice, partiality or corruption, or that some improper element was taken into consideration. *King* v. *Ransbury* (1942), 111 Ind. App. 523, 39 N. E. 2d 822.

Judgment affirmed.

Draper, P. J., not participating.

Crumpacker, J., not participating.

NOTE.—Reported in 81 N. E. 2d 706.