TENTA *v.* GURALY.

[No. 20,361. Filed November 28, 1966. Rehearing denied January 12, 1967. Transfer denied July 20, 1967.]

162

*George Vann, John W. Barce,* and *Barce, Barce and Vann,* of counsel, of Kentland, for appellants.

*Jerome B. Van Orman,* of Fort Wayne, for appellee.

WICKENS, C. J.—This action was brought to recover damages for inducing the breach of a contract and to enforce a constructive trust. Plaintiff-appellee recovered a judgment for damages in a trial by jury.

Facts leading to the alleged tort include the following. In 1946 Theresa Manyok was "more than 65 years of age, . . . a widow, and in need of a home where she would be cared for during her life, furnishing room and board, washing and other necessary comforts of life." A written contract including the above quotation was made between Mrs. Manyok and one Mary Guraly by which the latter was to provide the home and necessities mentioned for which on the death of Mrs. Manyok a farm belonging to Mrs. Manyok was to go to Mary Guraly as payment therefor. It was also provided by the contract that upon failure of performance a right was given to recover for all services rendered to date. Mary Guraly performed her part of the agreement until her death December 8, 1951.

On the 13th of December, 1951, a contract almost identical to the above was executed between Mrs. Manyok and Magdelin M. Guraly, (a daughter of Mary Guraly) appellee herein.[1] Under the terms of that agreement Mrs. Manyok lived with appellee 57 days until February 6, 1952. On that day appellants, Mary and Joseph Tenta called at the home

---

1. This agreement was heretofore subjected to an unsuccessful action for specific performance wherein appellee sued appellants. *Guraly v. Tenta et al.* (1956), 126 Ind. App. 527, 132 N. E. 2d 725.

of Magdelin Guraly, and Mrs. Manyok accompanied the Tentas to their home where she took up permanent residence.

It develops that a third, again almost identical, contract was executed dated February 6, 1952, in which Mary and Joseph Tenta assumed the obligation originally contracted for by Mary Guraly. All of the contracts were prepared by a Mr. Oppman who was Mrs. Manyok's attorney and one of the few persons who could completely converse with her because she spoke no English. The contracts had all been promptly recorded. On the 19th day of February, 1952, a letter prepared by Mr. Oppman and under signature of Mrs. Manyok was sent to appellee, Magdelin M. Guraly, in which she was told:

"As you have failed to perform your duties pertaining to my comfort of life, as contained in such contract, I hereby declare such contract forfeited and void.

As you have violated the terms of said contract as hereinbefore stated, I was compelled to look for another home, where proper care and all necessary comforts of life, will be furnished to me."

On April 25, 1952, decedent Theresa Manyok executed a will leaving all her property to appellant Mary Tenta. Mrs. Manyok executed a warranty deed conveying the farm to Mrs. Tenta on May 11, 1953. She died while residing at the Tenta's home on October 7, 1953.

Trial proceeded on a third amended complaint in which appellee, Magdelin M. Guraly, alleged that appellants, Mary and Joseph Tenta had induced Mrs. Manyok to breach the second contract and that appellants had become the owners of the Manyok farm, and that by reason of such actions appellants held the farm in constructive trust for Magdelin M. Guraly, appellee.

The complaint refers to actions occuring on or about February 6, 1952, the date of Mrs. Manyok's departure from Miss Guraly's home, and the contract between Mrs. Manyok

and the Tentas. The evidence shows the letter of February 19, 1952, in which Mrs. Manyok declared the contract void. We will herein assume the breach and its inducement, if any, occurred no later than February 19, 1952. This establishment of when the alleged tortious act occurred is essential because of the burden of establishing knowledge and intent as of that time.

Appellants assert that the action was barred by the two year statute of limitations. Acts 1881 (Spec. Sess.), ch. 38, § 38, p. 240; Acts 1951, ch. 301, § 2, p. 999, § 2-602, Burns' 1946 Repl. (1966 Cum. Supp.). This was presented by defendant-appellants' answer, to which appellee filed her demurrer which the court sustained.

Suit was commenced on September 6, 1956[2] and the alleged tort as we have related took place no later than February 19, 1952.

As the complaint was in two paragraphs and one answer was filed to both, the answer would prevail against the demurrer only if it stated a matter of good defense as to each paragraph of the complaint. *Loman* v. *Mason* (1911), 176 Ind. 571, 572, 96 N. E. 578; *Walker et al.* v. *Walker et al.* (1898), 150 Ind. 317, 324, 50 N. E. 68; *Hollingsworth* v. *McColly* (1901), 26 Ind. App. 609, 613, 60 N. E. 371.

In support of the argument that the two year provisions of the limitation statute apply, appellants say that the complaint is insufficient to state a cause of action to declare a constructive trust. The argument is made that the second paragraph of the amended complaint states no fact additional to those of the first paragraph which was for damages for inducing the breach. In the absence of a motion to require appellee to further specifically state facts giving rise to her constructive trust theory we hold that the second paragraph of the third amended complaint was sufficient to

2. This Court received the matter fully briefed in April, 1966.

state a cause of action to declare a constructive trust and therefore the same did not come under the two year statute of limitations. *Parks* v. *Satterthwaite, Adm'r.* (1892) 132 Ind. 411, 415, 32 N. E. 82. *Terry* v. *Davenport* (1916) 185 Ind. 561, 574, 112 N. E. 998.

Appellants claim error in the action of the trial court in giving to the jury over the objections of appellants, the plaintiff's tendered instructions 5 and 6. They are:

"*No. 5.* The court instructs you that record notice is such notice as is presumed to be imparted by recording with the proper authorities a properly drawn and properly acknowledged instrument, and the record of any instrument entitled to be recorded, will give constructive notice to the persons bound to search for it.

The court further instructs you that an instrument containing the conveyance of an interest in real estate is an instrument entitled to be recorded and that persons bound to search for record notice of it are those obtaining an instrument containing a subsequent conveyance of the same real estate."

"*No. 6.* The court instructs you that an allegation in a plaintiff's complaint of knowledge or notice includes not only actual knowledge or notice, but implied or constructive notice, and evidence tending to show either actual or constructive knowledge or notice is admissable under a general allegation in a complaint of knowledge or notice and such allegation may be sustained by proof of either."

The appellants objected to the giving of these instructions because their effect was to permit the jury to believe that the recording of the contract in this case constituted knowledge of its existence. Their further objection was that plaintiff was, under her own theory, required to prove that defendants had actual rather than constructive notice of the existence of the contract.

We think these instructions have the effect of telling the jury that "recording" and "record notice" mean the same thing as actual notice in law. We believe instruction No. 6 tells the jury that constructive notice is sufficient to prove

actual knowledge. The combined purpose of these instructions appear to be to convince the jury that actual knowledge of the existence of the contract is unessential if the contract was recorded.

The tort of inducing the breach of a contract has two elements which must be alleged and proven. They are, first, that defendants knew of the existence of the contract, and second, that the breach was intentionally induced. The necessity of these elements is well illustrated in appellee's third amended complaint where she charges:

> "6. That the defendants at all times hereinabove mentioned *knew* of the above said contract and that plaintiff would receive benefits under the said contract; that the defendants *having knowledge of the existence of the said contract* by reason of the above acts as set forth in paragraph 5, *intentionally and knowingly* induced the said Theresa B. Manyok to break and repudiate the said contract . . ." (Emphasis ours).

This does not charge appellants with constructive notice of the contract. Record notice is not mentioned in paragraph 5 or in any part of the complaint. It positively charges that appellants had knowledge of the existence of the contract and that requires not record notice but proof that appellants were in fact aware of the contract.

The rule is clear that it is essential to aver and to prove defendants' actual knowledge of the contract in question.

> "A defendant who has not been guilty of conduct otherwise actionable ought not to be held liable for having brought about, though wrongfully and without cause, the breach of a contract of which he had no knowledge." *McGurk* v. *Cronenwett* (1908) 199 Mass. 457, 85 N. E. 576, 577.

Appellee has cited and quoted Indiana authority to the general negligence proposition that allegations of knowledge

or notice include actual knowledge and also implied or constructive notice. *Johnson* v. *Gebhauer* (1902) 159 Ind. 271, 64 N. E. 855. This rule in negligence cases of course includes the knowledge with which a reasonably prudent man is chargeable, that which he knew or could have learned in the exercise of reasonable care.

The specific charge in the complaint is that the defendants "intentionally and knowingly" acted; it requires no citations to understand that negligent interference is not charged in this case. We have found no case in which Indiana has had occasion to pass on negligent interference. However, most courts to whom the question has been presented have held that there is no liability for negligent invasion of another's contract rights. 26 A. L. R. 2d 1227, 1233; 84 A. L. R. 43; 86 C. J. .S, Torts, § 44, p. 964; *Robins Dry Dock and Repair Company* v. *Flint, New York* (1927) 48 S. Ct. 134, 275 U. S. 303, 309, 72 L. Ed. 290; *Baruch* v. *Beech Aircraft Corp.* (10th Cir. 1949) 175 F. 2d 1.

If the instructions merely had permitted the jury to consider the evidence that the contract was recorded, as it might relate to proof of knowledge, a very different question would be presented. The very essence of the tort here is knowledge, and, conversely, not what defendants might have learned upon inquiry.

Appellee in support of the instructions asserts that "record notice" is a matter within the issues because the alleged title was taken with knowledge of appellee's contract. However, the real issue on knowledge was not whether appellants knew of the contract when they received the deed, which was more than one year after Mrs. Manyok had written appellee Magdelin Guraly that the contract was void. The real issue of knowledge is what was known to appellants *before* the contract was breached. If appellee intended the instructions to apply to notice, knowledge, and recording more than a year after the breach, they should have been so limited.

In our opinion these instructions tell the jury that the law implies such knowledge as was charged in the complaint from the mere proof that the contract was recorded. Further we hold that instruction No. 5 is susceptible to the false interpretation that one accepting such contract as appellants had here is "bound to search for record notice" and is chargeable with notice of any previously recorded document.

Because in this action it was necessary to allege and prove actual knowledge and intentional acts in inducing the breach we find both instructions No. 5 and 6 erroneously given and the giving of the same is reversible error.

Appellants have assigned error in the admission into evidence of certain testimony of the appellee regarding conversations of Mrs. Manyok. In each of the two instances complained of, appellants objected on the ground of the testimony being hearsay and the evidence was allowed as part of the *res gestae.*

The first of these objections was made when appellee was testifying as to a conversation with Mrs. Manyok on the day before her departure from Miss Guraly's home. Miss Guraly said she had heard Mrs. Manyok talking to herself:

Miss Guraly: "Yes, I overheard her talking to herself, and she said, 'I am going to take this one and leave this one.' And I walked to the bedroom door and I said, 'Could I help you with whatever you are doing?' And she said, 'No.' She says, 'I am going to move.' And I says, 'Well, how could you move? We have a contract.' And she said—"

Mr. Vann (Counsel for Defendant-appellants) : "To which we would object, your Honor, to any further conversation."

The Court: "The objection is overruled."

Miss Guraly: "And she said,—I said, 'Well, how could you move? We have a contract together, which continued from my mother's.' And she said, 'Well, Mrs. Tenta told her that the contract is nothing.' And I said,

'That's not the way I understand it.' So then that's all that was said then."

Such evidence is not only heresay, it is double hearsay. It has been called a tale of a tale of a tale.

"When the witness reports on the stand that one declarant stated to him that another declarant made a given statement, this may be termed "double hearsay," if both statements are offered to prove the facts asserted." McCormick, Evidence, § 225, p. 461.

This evidence also fails the basic test of personal knowledge. It is a rule more ancient than the hearsay rule that a witness is only qualified to testify to matters within the personal knowledge of that witness. McCormick, Evidence, § 226, p. 461. While Miss Guraly had knowledge of what she heard Mrs. Manyok say, she was entirely without personal knowledge as to what Mrs. Tenta told Mrs. Manyok.

The importance of the foregoing evidence cannot be overlooked. It is the only evidence in the record which bears on the subject of the actual knowledge of the existence of the contract by either of the appellants, the Tentas.

The second occurrence complained of was when Miss Guraly related on the witness stand the events in her home the day Mrs. Manyok left it. Miss Guraly was at the kitchen table with a friend of hers and her mother's, a Mrs. Bobustick. Also at the table was a Mrs. Bartosh and Miss Guraly's sister. Miss Guraly told the Court:

Miss Guraly: ". . . and I told them, 'I have news for you people. Mrs. Manyok is leaving me.' Of course they were surprised, and my mother's best friend [Mrs. Bobustick] asked her [Mrs. Manyok] why she was leaving."

Mr. Vann: "To which we object, your Honor, it is hearsay."

Mr. Van Orman (Counsel for Plaintiff-appellee): "Your Honor, the same res gestae."

The Court: "Objection overruled."

Mr. Vann: "This is to a third person."

Miss Guraly: "This Mrs. Bobustick asked Mrs. Manyok why she was leaving. She says, 'I don't know.' She says [Mrs. Bobustick], 'Doesn't Miss Guraly take care of you like her mother did?' These are the very words, as God as my judge—"

The Court: "That may be stricken."

Miss Guraly: "I am sorry. So then Mrs. Bobustick, like I said, asked her if I was taking care of her like my mother did. She said 'Yes. She is good to me. She does everything I ask her. Whenever I want to go to the farm, she takes me.' "

Mr. Van Orman: "This you say was about twenty minutes to twelve?"

Miss Guraly: "Twenty minutes to twelve. Then she said—"

Mr. Van Orman: "Then where did she go?"

Miss Guraly "Well, she said the Tentas are coming for [me] at twelve noon."

\* \* \* \* \* \* \*

Miss Guraly: "Well, we were still sitting at the table, about five minutes to twelve, all of a sudden we didn't hear anybody knock at the door, no one knocked, and in the kitchen door Mrs. Tenta said, 'Okay, Mrs. Manyok, let's go.' And she has never stepped foot in my house."

Again this testimony, so clearly hearsay, is important. The inherent danger of hearsay evidence is illustrated by ▮ this self-serving answer. Such evidence is particularly harmful when a factual matter is submitted to the jury.

These recitals must be tested to determine whether they are within any exceptions to the hearsay rule. Appellee asserted that they were part of the *res gestae* at the time the evidence was offered and apparently the Court assumed this to be the case.

To be admissable as part of the *res gestae* there must be a spontaneous exclamation. The statement cannot be ▮ a mere narrative of past events. *Morris* v. *Miller* (1931) 93 Ind. App. 534, 538, 179 N. E. 29.

Other discussions of *res gestae* indicate that the statement must possess at least the following essential elements:

"(1) . . . must relate to the main event and must explain, elucidate, or in some manner characterize that event, . . . (2) . . . be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair, . . . (3) It must be a statement of fact, and not the expression of an opinion, . . . (4) It must be a spontaneous or instinctive utterance or occurrence of thought, dominated or evoked by the transactions or occurrence itself, and not the product of premeditation, reflection, or design, . . . (5) . . . must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, . . . (6) It must appear that the . . . was made by one who either participated in the transaction or witnessed the act or fact concerning which the statement or declaration was made." 31A C. J. S., Evidence, § 403 (1), p. 981.

"Most of the Indiana decisions which invoke the shibboleth *res gestae* are found to involve statements made under circumstances of external physical shock such as would quell the reflective faculties and allow the event to speak through the person." Handbook on Indiana Evidence (1961) I. S. B. A., p. 157.

We conclude that neither of the statements should have been admitted as part of the *res gestae*. They narrate past events. They are neither exclamations nor spontaneously made. They are the products of interrogation including leading questions. They even suggest a lack of being voluntary. Mrs. Manyok was being intimidated by the contract. These statements are hearsay at best and in addition, are not made from the personal knowledge of the declarant. We hold the admission of this evidence to constitute reversible error.

We are required to determine if there is any evidence or reasonable inference to be drawn therefrom that appellants knowingly and intentionally induced Mrs. Manyok to break

her contract with appellee. Appellants urgently present that without the hearsay evidence which we have mentioned there is a complete void on the subjects of knowledge of an existing contract and intent to induce a breach by the appellants, and that therefore the decision is contrary to law and judgment should be ordered in their favor.

As to the defendant Joseph Tenta the only evidence is especially meager. His only act in the record is driving the car to Miss Guraly's house when Mrs. Manyok left. His name was not on the new contract between Mrs. Manyok and Mrs. Tenta. He is not mentioned in Mrs. Manyok's will of April 25, 1952, leaving all Mrs. Manyok's property to Mrs. Tenta. Miss Guraly even testified: "Two days later [after Mrs. Manyok left the Guraly home on February 6, 1952] Mr. Tenta came for her [Mrs. Manyok's] belongings, Mr. Tenta, and *he has never been in my house.*" (Emphasis ours).

We have examined the record and find no other evidence relating to knowledge by Mary Tenta except hearsay. Miss Guraly additionally testified regarding "urging Mrs. Manyok to leave your [Miss Guraly's] home," that such was "done without my knowledge, yes, *I don't know what they talked about at the Tenta home.*" (Emphasis ours).

Appellee argues that there are nine incidents from which she urges inference may be drawn. As to the nine points which appellee says the evidence showed:

1. That decedent had lived in the home of the appellee and her mother for ten years.
2. Appellee had taken care of decedent with her mother and after her mother's death continued such care.
3. It was difficult for decedent to leave the home of appellee because of illness and infirmity and she had visitors in the house.
4. Appellants did not visit decedent during appellee's mother's lifetime but thereafter took decedent in their car for three or four visits.

We fail to see how any of the above four developments if sustained by the evidence, relate to proof of knowledge of an existing contract or give rise to any permissable inference. In fact we think only number 4 has any relevancy to any issue here.

Next appellee says:

5. Decedent was happy and satisfied with the home and care received from appellee and did not know why she was leaving.

If we are to assume this was shown without reference to hearsay evidence, we do not perceive how it constitutes evidence or warrants inferences of intentional and knowing inducement of the breach where there remains no proof that appellants knew of any contract.

Then appellee asserts:

6. Appellants came to the home of appellee and "actually removed" decedent from the home.

7. Appellants took decedent to their home and "never afterward let appellee and decedent's good friend Mrs. Bobustick visit her."

8. The date decedent left appellee's home appellant Mary Tenta entered into a contract with the decedent which was identical to the one decedent had with appellee.

9. May 11, 1953, decedent conveyed by warranty deed the real estate mentioned in the contracts to the appellants which deed was not recorded until October 16, 1953.

Of course the last item above could have no bearing on whether the tort was committed as charged on or before February 19, 1952. "Actually removed" decedent from the home is a rather colorful way to describe what the evidence seems to show happened when Mrs. Manyok left the home of Miss Guraly; even if the Tentas had picked Mrs. Manyok up and carried her out of the door (which did not happen) we could scarcely infer from that that they knew she had a

written contract with Miss Guraly. We do not find the evidence to establish that the Tentas prevented Mrs. Bobustick or Miss Guraly from visiting Mrs. Manyok; but if we assume that were true, it would not establish or permit an inference that a tort of intentionally and knowingly inducing a contract breach occurred prior to or on or about February 19, 1952.

The fact that an identical contract was made by Mary Tenta with Mrs. Manyok and it was dated the day Mrs. Manyok left Miss Guraly's home may be susceptible to speculation but we can establish no reasonable inference in support of the appellee from this. It should be recalled that all these contracts were prepared by Mr. Oppman, Mrs. Manyok's attorney. The evidence also shows he wrote and witnessed Mrs. Manyok's will of April 25, 1952, in which Mary Tenta was sole beneficiary of all the estate. That he wrote identical contracts or dated the instrument on a certain day is not to be charged to appellants. The fact that Mrs. Manyok had her own independent legal adviser of itself negates the suggestion that other persons were inducing her or leading her to do anything against her will or best interests. In addition, Mrs. Manyok's attorney prepared the letter of February 19, 1952, advising Miss Guraly that Mrs. Manyok elected "to declare the contract forfeited and void. . . ."

Finding a total absence of evidence on the vital issues we are convinced that the judgment was contrary to law and not sustained by the evidence. Accordingly the decision is reversed and the trial court is ordered to enter judgment for appellants and against appellee.

Carson, Faulconer, Prime, JJ., concur.

NOTE.—Reported in 221 N. E. 2d 577.