AMERICAN UNITED LIFE INSURANCE COMPANY *v.* BECKY A. PEFFLEY (SANDERS)

[No. 572A220. Filed October 4, 1973. Rehearing denied January 24, 1974.]

*Ralph A. Cohen, Harry T. Ice, Ice Miller Donadio & Ryan,* of Indianapolis, for appellant.

*Daniel F. Cummings, Miles and Cummings,* of Indianapolis, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Because the Marion Circuit Court entered judgment on the evidence in favor of Plaintiff-Appellee, Becky Peffley (Becky), as beneficiary of a group life insurance policy issued by Defendant-Appellant, American United Life Insurance Company (AUL), it appeals, alleging that certain evidence was improperly excluded which would have required submission of the case to the jury on the issue as to whether

the insured changed beneficiaries under the policy prior to his death.

We reverse.

## FACTS

The facts and evidence most favorable to Becky as Appellee and in support of the judgment are:

Ronald Peffley (Decedent) and his first wife, Louise Peffley (Louise), were divorced in 1964. Shortly thereafter the Decedent married Plaintiff-Appellee Becky Peffley (Becky).

In 1965, American United Life Insurance Company (AUL) issued a group life insurance policy to Decedent's employer, the School Board of the City of Indianapolis, under which Decedent's life was insured for $12,000. Becky was originally named as beneficiary, subject to the following provision in the policy relating to beneficiary changes:

"BENEFICIARY. The Employee may change the beneficiary from time to time without the beneficiary's consent by filing a written notice of such change through the Employer."

Decedent and Becky were divorced in December, 1967, approximately ten months prior to his death in October, 1968.

Following Decedent's death, AUL paid the entire proceeds of the policy to Louise (Decedent's first wife), basing its action upon copies of documents in its files which indicated that the beneficiary had been changed by him three months prior to his death. These copies consisted of three documents:

Exhibit C: A form transmittal letter from AUL to Decedent's employer stating that enclosed change-riders had been prepared designating a new beneficiary and correcting the name of the insured as requested by the Decedent.

Exhibit D: AUL's change-rider form acknowledging receipt of a change card from the Decedent and

certifying the designated beneficiary to be Louise.

Exhibit E: AUL's change-rider form acknowledging correction of Decedent's name on the policy from Ronald C. Peffley to C. Ronald Peffley.

Becky subsequently brought suit against AUL to recover the proceeds of the policy, after having been informed by AUL that it did not possess the original written notice (change card) executed and signed by the Decedent.

At trial, AUL produced the above-mentioned documents (Exhibits C, D, and E) in order to show that the Decedent had filed the written notice of beneficiary change (change card) in accordance with the terms of the policy, thus operating to divest Becky of her interest in the insurance proceeds. As a foundation, AUL produced its assistant corporate counsel and a supervisor of group policies who identified the exhibits as those found in AUL's office files and testified to the following internal procedure governing policy changes initiated by an insured:

> A printed "change card" is obtained by the insured from his employer, completed and mailed to AUL. Upon receipt, its contents are reviewed by an AUL employee, who then prepares the transmittal letter and change-rider documents. These forms reflect any changes appearing on the change card. The originals of the documents are sent to the employer-policyholder along with the change card. Carbon copies are kept in AUL's files although no such copies of the change card are retained.

Following AUL's offer of these exhibits and Becky's objections thereto, the following stipulation was entered into the record by the parties:

> "It is stipulated by and between the parties that the original of the change of beneficiary card . . . respecting Mr. Peffley, if there was a card . . . *has been searched for diligently* in the files and at the office of American United Life Insurance Company in their files and in the files at the offices of the Indianapolis School Board Commissioners, the de-

cedent's employer, that *these searches failed to reveal any such card and it cannot be found* at any of those places." (Emphasis supplied.)

The trial judge nevertheless sustained the objection and excluded these three documents (Exhibits C, D, and E) without stating his reasons therefor. An attempted reoffer later in the trial suffered the same fate.

AUL also offered into evidence Exhibit G, a copy of Decedent's certificate of insurance (hereinafter referred to as "the policy") found among his private papers. Upon the face of the policy was the following memorandum, printed in pencil beside Becky's name as beneficiary:

"CHANGED 7/8/68 TO C. LOUISE PEFFLEY."

Louise and Decedent's friend both testified to their familiarity with Decedent's block printing and identified the hand printing as Decedent's.

After offering the policy (Exhibit G) into evidence, AUL further offered a promissory note (Exhibit J), which Louise testified was executed by the Decedent as an exemplar of his hand printing to further authenticate the memorandum.

These exhibits (G and J) were also excluded by the trial judge.

At the end of AUL's case, Becky moved for judgment on the evidence, which motion was granted by the trial judge, who thereupon discharged the jury and entered judgment for Becky on her claim.

## ISSUES

The following issues are presented by this appeal:

ISSUE ONE.    Did the trial court erroneously exclude, as secondary evidence, copies of AUL's business records (Exhibits C, D, and E) indicating that a change of beneficiary was effected by Decedent prior to his death?

ISSUE TWO: *A.* Was the Decedent's hand-printed private memorandum on his copy of the policy (Exhibit G) properly excluded as violative of the hearsay rule, and

*B.* Was the promissory note (Exhibit J) purportedly executed by Decedent properly excluded as irrelevant?

As to ISSUE ONE, Becky contends that AUL's transmittal letter and change-rider forms were properly excluded under the "best evidence" rule, claiming the exhibits were offered to prove the contents of the change card which was not itself produced by AUL as the best proof of the beneficiary change. In addition, she argues that this evidence, if admitted, would have had the effect of varying the terms of the policy, thereby violating the parol evidence rule.

AUL contends these documents are relevant evidence of a change in beneficiaries, having been consummated by written notice from the Decedent. AUL argues that such documents as these are admissible as its business records which could not have been prepared except by receipt of the change card from the Decedent. Furthermore, it rejects Becky's contention that the "best evidence" rule is operative to exclude this evidence, arguing that the change card was not in its possession and was proven lost after a diligent search was conducted.

As to ISSUE TWO-A, Becky contends that the printed memorandum (Exhibit G) was inadmissible as a declaration by the Decedent (presumably basing her contention on the rule excluding hearsay evidence, although no such specific reference is found in her brief on appeal). She further claims the exhibit is inadmissible under the "best evidence" and parol evidence rules, for the same reasons advanced by her under ISSUE ONE.

AUL disputes these assertions and claims that Exhibit G was a properly authenticated hand printing of the Decedent,

admissible to show that he had, by his own hand, noted the change of beneficiaries upon the face of his policy.

As to ISSUE TWO-B, Becky maintains that the sample of Decedent's printing (Exhibit J) was so far removed from the issues involved at trial that its exclusion was justifiable for the reason that it was irrelevant.

AUL argues that the printing exemplar was admissible so that the jury could employ it as a basis of comparison with the printing upon the policy (Exhibit G) and satisfy itself that the memorandum on the policy was, in fact, printed by the Decedent.

## DECISION

As both issues concern exclusion of evidence, our decision should be prefaced by a recitation of familiar principles governing appellate review of error created by wrongfully excluded evidence.

In general, an exclusionary ruling will not be found erroneous if sustainable on any valid theory, regardless of the grounds asserted by the parties at trial. *See, Eckman* v. *Funderburg* (1915), 183 Ind. 208, 108 N.E. 577; *Lengyel* v. *Hecht* (1968), 143 Ind. App. 660, 242 N.E.2d 135. Once found to be erroneous, however, rejection of evidence which is vital to an appellant's case is necessarily prejudicial. *Dollman* v. *Pauley* (1931), 202 Ind. 387, 174 N.E. 729; *Northern Indiana Public Service Co.* v. *McClure* (1940), 108 Ind. App. 253, 24 N.E.2d 788; *Plymouth Savings & Loan Ass'n No. 2* v. *Kassing* (1919), 72 Ind. App. 1, 125 N.E. 488.

So, our pursuit is of valid theories on which the trial court's exclusion of the proffered evidence in question might be justified.

ISSUE ONE.

CONCLUSION—It is our opinion that the trial court committed reversible error in excluding AUL's tendered file

documents (Exhibits C, D, and E) indicating a change of beneficiary from Becky to Louise was effected prior to Decedent's death.

*Relevancy*

If Exhibits C, D, and E are relevant, they should be admitted into evidence so that the jury may have before it all evidence which logically tends to establish or give weight to a factual issue in the case unless objectionable on other grounds. *Warrenburg* v. *State* (1973), 260 Ind. 572, 298 N.E.2d 434; *Kavanagh* v. *Butorac* (1966), 140 Ind. App. 139, 221 N.E.2d 824.

The overriding factual issue confronting the jury in this case was whether AUL received a written change card from the Decedent directing that beneficiaries be changed on the policy. The existence of these business record exhibits tended to prove the existence, and receipt by AUL, of the change card directing AUL to change the beneficiary from Becky to Louise—a fundamental fact.

Regardless of the whereabouts of the change card at the time of trial, these three exhibits tended to prove that such a card had been received setting in motion the machinery that produced a tell-tale deposit of carbon copies in AUL's records, *i.e.*, a transmittal letter to Decedent's employer (Exhibit C), a change-rider form acknowledging receipt of a change card from Decedent designating Louise as the beneficiary (Exhibit D), and a change-rider form making a minor correction in the Decedent's name (Exhibit E). Such evidence could hardly be excluded as irrevelant.

*Self-serving Declaration—Hearsay*

Neither may these three exhibits be excluded as self-serving or hearsay if they qualify as business records.

A synthesis of the Indiana cases treating what modern authorities call the "business record" exception to the hear-

say rule is that documentary evidence is admissible if identified by its entrant or one under whose supervision it is kept and shown to be an original or first permanent entry, made in the routine course of business, at or near the time of the recorded transaction, by one having both a duty to so record and personal knowledge of the transaction represented by the entry. *Herman* v. *State* (1965), 247 Ind. 7, 210 N.E.2d 249, *cert. denied,* 384 U.S. 918, *Polus* v. *Conner* (1931), 92 Ind. App. 465, 176 N.E. 234; *J. P. Smith Shoe Co.* v. *Curme-Feltman Shoe Co.* (1918), 71 Ind. App. 401, 118 N.E. 360; *Marks* v. *Box* (1913), 54 Ind. App. 487, 103 N.E. 27; *Indianapolis Outfitting Co.* v. *Cheyne Electric Co.* (1913), 52 Ind. App. 153, 100 N.E. 468.

As indicated in the factual statement, an adequate foundation was laid by AUL's counsel for the introduction of Exhibits C, D, and E as "business record" exceptions to the rule against admission of hearsay.

Two witnesses (AUL's assistant counsel and a supervisor over group policies) testified that these file documents were prepared in the ordinary course of AUL's business shortly after receipt of a change card by an employee whose duty it was to type them and who had personal knowledge of the card's existence, receipt, and content. The self-serving aspect of such evidence only affects its weight. *McDonough* v. *State* (1961), 242 Ind. 376, 175 N.E.2d 418; *State* v. *Central States Bridge Co.* (1911), 49 Ind. App. 544, 97 N.E. 803.

## *"Best Evidence" Rule*

Exclusion of Exhibits C, D, and E may not be defended on the ground they violate the "best evidence" rule.

It is axiomatic that an original writing is the most trustworthy proof of its content. *See, Supreme Tribe of Ben Hur* v. *Bastian* (1926), 85 Ind. App. 327, 151 N.E. 346. The revered "best evidence" rule naturally follows to reject secondary evidence of an inferior, and

possibly more suspicious, quality when offered in substitution for the primary writing.

Professor McCormick aptly expressed this maxim, which he perhaps more artfully denominates the "Original Document Rule":

> "[I]n proving the terms of a writing, where the terms are material, the original writing must be produced *unless it is shown to be unavailable for some reason other than the serious fault of the proponent.*" *McCormick on Evidence,* § 230 at p. 560 (West 2d ed. 1972). (Emphasis supplied.)

The "best evidence" rule does *not* operate, however, to indiscriminately exclude *all* secondary evidence.

Indiana courts, at an early date, recognized that unavailability of a lost writing will permit introduction of other evidence to prove the writing's content if the proponent satisfactorily demonstrates to the trial court that the original writing is lost. If he can show by a preponderance of the evidence that a diligent but unsuccessful search for the writing has been made in the place or places where it is most likely to be found, secondary evidence of the writing is admissible to prove content of the writing. *Howe* v. *Fleming* (1889), 123 Ind. 262, 24 N.E. 238; *The Johnson Harvester Co.* v. *Bartley* (1883), 94 Ind. 131.

Ordinarily it is within the discretion of the trial judge to make the preliminary factual determination whether an adequate showing of this sort has been made. *Johnson* v. *Jordan* (1917), 64 Ind. App. 110, 115 N.E. 600.

A unique situation is presented by this case obviating the necessity of such prior findings by the court. The parties *stipulated* that a diligent search for the change card had been conducted by AUL in its files and in the files of Decedent's employer—the place where it would be sent according to AUL's normal business practice. Neither party challenged the diligence or scope of the search, or limited the breadth of the stipulation.

The loss of, and diligent search for, the original writing having been conclusively established by the parties, the trial court could not properly exclude Exhibits C, D, and E on the basis of the "best evidence" rule or the Original Document Rule.

*Parol Evidence Rule*

Becky's assertion that admission of these three exhibits would violate the parol evidence rule is froth easily blown away by a statement of the rule.

The parol evidence rule operates to exclude extrinsic evidence of *prior* or *contemporaneous* declarations and transactions offered to vary or *contradict* the terms of an integrated written agreement. *See, Vernon Fire & Casualty Ins. Co.* v. *Thatcher* (1972), 152 Ind. App. 692, 285 N.E.2d 660 ; I.L.E. *Evidence* § 181.

It obviously has no application to evidence offered to prove a change of beneficiary *subsequent* to the execution of the insurance agreement and in accordance with its terms. *See,* 30 Am. Jur. 2d *Evidence* § 1063 at p. 203.

Thus, we can find no valid theory supporting the trial court's exclusion of Exhibits C, D and E, and the judgment must be reversed for this reason.

ISSUE TWO.

CONCLUSION—It is the opinion of the majority of this court, not including the author of this opinion, that AUL should be afforded the opportunity on retrial to show circumstantial probability of truthworthiness and the need for the admission into evidence of Exhibits G and J.

Although we unanimously agree that our conclusion as to ISSUE ONE requires a reversal of this cause for retrial, it is expedient that the admissibility of Exhibits G and J also be considered as they may be offered again by AUL upon retrial.

The oft-stated general rule is that declarations of a decedent offered as proof of their content are hearsay and excludeable as such, unless falling within one of the exceptions to the hearsay rule. *Barger* v. *Barger* (1943), 221 Ind. 530, 48 N.E.2d 813; *Brown* v. *Kenyon* (1886), 108 Ind. 283, 9 N.E. 283; *Tenta* v. *Guraly* (1966), 140 Ind. App. 160, 221 N.E.2d 577; *First Bank and Trust Co. of South Bend* v. *Tellson* (1954), 124 Ind. App. 478, 118 N.E.2d 496.

Decedent's memorandum (Exhibit G) is not a self-serving declaration, a quality found in numerous cases on this subject. It is, nevertheless, hearsay. It was offered to prove that Decedent entered a hand-printed memorandum on his copy of the policy that the beneficiary was changed to Louise on July 8, 1968.

AUL made no showing at trial, nor does it contend on appeal, that this evidence qualifies under any currently recognized exception to the hearsay rule.

The most obvious possibility is that a writing of this sort might be admissible as part of the "res gestae", if satisfactorily shown to be a spontaneous exclamation which accompanies and gives character to the act to be proved. *McConnell* v. *Hannah* (1884), 96 Ind. 102; *Tenta* v. *Guraly*, *supra*.

No such spontaneity appears to have been presented by the evidence before the trial judge. Absent such showing, he could reasonably find that Decedent's printed utterance that the beneficiary was changed to Louise on July 8, 1968, was so unconnected in time with the act it described that it constituted a mere narration of a past event.

It is the opinion of this writer that, under the circumstances presented by this case, the law in this state prevents the admission of Exhibit G as violative of the hearsay rule. *See, e.g., Barger* v. *Barger, supra* (post-testamentary declaration as to execution of a will held inadmissible as hearsay).

The majority of this court, however, adopts the reasoning of other authorities which take a more flexible approach to exceptions to the hearsay rule.[1] Wigmore[2] in discussing the principles underlying the exceptions to the hearsay rule indicates they are based on two considerations: "a Circumstantial Probability of Trustworthiness, and a Necessity, for the evidence."

The majority adopts these two principles as its standard and liberalizes the hearsay rule by adopting a general exception which would apply if the offering party demonstrates circumstantial probability of trustworthiness and necessity.

The author hereof is of the opinion that, regardless of the merits of engrafting further exceptions onto the hearsay rule, this court is faced with a long history of strict applications of the exceptions. To hold Exhibit G. admissible under these circumstances would of necessity overrule *Barger* v. *Barger, supra,* and similar cases excluding hearsay under circumstances akin to those surrounding the admission of Exhibit G. Any such holding represents a major change in the direction of the law relating to admissibility of hearsay evidence. To invade the vast field of hearsay exceptions hardly seems proper as this case must be reversed on other grounds in any event.

Furthermore the trial court's action in excluding this evidence should be upheld if there is any legal basis for doing so. *Cain* v. *State* (1973), 261 Ind. 31, 300 N.E.2d 89.

---

1. The proposed new rules of federal procedure include new exceptions. The comment to §§ 803 (24) and 804 (b) (6) is in part: "It would however, be presumptuous to assume that all possible desirable exceptions to the hearsay rule have been catalogued and to pass the hearsay rule to oncoming generations as a closed system." Exception (24) of Rule 804 (b) (6) provides for Other Exceptions as to: "A statement not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness."

Also, see *Gagnon* v. *Pronovost* (1952), 97 N.H. 500, 92 A.2d 904, 905.

2. 5 *Wigmore on Evidence* § 1420 at 202. (Chadbourne rev. 1970).

Nevertheless, it is the opinion of the majority that Exhibit G should be admitted on retrial if counsel should substantially demonstrate the existence of a "circumstantial probability of trustworthiness" and "necessity".

The printing on the promissory note (Exhibit J) was offered as an exemplar for the limited purpose of authenticating the memorandum of the Decedent on his copy of the policy (Exhibit G). Under ordinary circumstances, such an exemplar is admissible for this purpose. Indiana Code 1971, § 34-3-6-1, Ind. Ann. Stat. § 2-1723 (Burns Code ed.), reads:

> "In any proceeding before a court or judicial officer of the State of Indiana where the genuineness of the handwriting of any person may be involved, *any admitted or proved handwriting of such person shall be competent evidence as a basis for comparison* by witnesses, or by the jury, court or officer conducting such proceeding, to prove or disprove such genuineness." (Emphasis supplied.)

This exemplar (Exhibit J) can only be relevant for authentication purposes if Exhibit G (the hand-printed memorandum of the Decedent on the policy) is properly admitted into evidence. Therefore should Exhibit G be admitted at retrial, so should Exhibit J. However, if Exhibit G is properly excluded as not meeting the standard of trustworthiness and necessity, Exhibit J likewise must fall—its relevancy depends upon Exhibit G.

The judgment rendered by the trial court is therefore reversed and the case remanded for a new trial consistent with the majority views expressed herein.

Sullivan and White, JJ., concur.

NOTE.—Reported at 301 N.E.2d 651.

## ON PETITION FOR REHEARING

BUCHANAN, J.—The central factual issue in this case was whether the deceased-insured changed the beneficiary of a

certain American United Life group life insurance policy on his life from Plaintiff-Appellee (Becky) to Louise, his first wife. To do so the deceased-insured would have been required to execute a Change of Beneficiary card.

Becky stipulated that a search had been made by the parties concerned for the original of a Change of Beneficiary card, "if there was a card," and maintains our opinion assumes Becky's acknowledgment of the *existence* of such card, a fact which Becky stoutly denies.

We held that Exhibits C, D, and E, excluded by the trial court, should have been admitted in evidence as they tended to support the execution of a Change of Beneficiary card by decedent. Our opinion carefully uses the words "diligent search" and in no way implies that Becky stipulated the existence of the Change card. The existence or non-existence of the Change card was for the jury to determine and Exhibits C, D, and E tended to support the existence and the contents of such a writing.

The stipulation was recognized for just what it was and no more, *i.e.*, a diligent search had been conducted for an instrument which may or may not have been in existence. No semantic sleight of hand here.

Appellee's Petition for Rehearing is denied.

Sullivan, P.J., and White, J., concur.

NOTE.—Reported at 306 N.E.2d 131.