**STATE of Indiana, Appellant (Defendant Below),**

v.

**James P. EDGMAN, Individually, and as Administrator of the Estate of Lorene A. Edgman, Deceased, on behalf of himself and said Estate, Appellee (Plaintiff Below).**

**No. 3–680A171.**

Court of Appeals of Indiana, Fourth District.

April 13, 1983.

Rehearing Denied May 16, 1983.

Transfer Denied July 7, 1983.

Linley E. Pearson, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellant.

Richard Kuhlman, Stephen B. Cohen, George C. Pontikes, William J. Stevens, Foss, Schuman & Drake, Chicago, Ill., Cecil B. Cohen, Thomas R. Bullard, Cohen, Cohen & Bullard, East Chicago, David F. McNamar, Michael R. Franceschini, Steers, Sullivan, McNamar & Rogers, Indianapolis, for appellee.

MILLER, Judge.

The State of Indiana, dissatisfied with an adverse jury award in a negligence case, brings this appeal for reversal of the judgment. James P. Edgman, individually and as administrator of his wife's estate, brought suit against the State for negligent design, construction and maintenance of a road section in Lake County, where he was seriously injured and his wife killed in a two-car collision with Robert Casillas. The jury granted $1.8 million in damages, and the State appeals, primarily alleging errors at trial. We find no grounds for reversal of this judgment and affirm.

## ISSUES

The State claims the trial court erred:

1) in overruling the State's motion, filed beyond the deadline defined in Ind. Rules of Procedure, Trial Rule 76, for change of venue from the county,

2) in overruling the State's challenges for cause of prospective jurors who indicated familiarity with the accident scene,

3) in denying the State's motion for summary judgment because Edgman could not show the State's negligence was the proximate cause of the collision,

4) in denying the State's motions for judgment on the evidence (directed verdict),

5) in allowing the opinion evidence of Dr. Gary Long, a registered (licensed) professional engineer, because he was not so registered in Indiana.

6) in excluding from the evidence State's Exhibit 12, a police accident report, the declarant of which was dead,

7) in failing to grant the State's request for mistrial when one of Edgman's witnesses testified the road was known as a "killer highway,"

8) in admitting evidence, challenged by pre-trial motion in limine and by objection at trial, of recommendations and suggestions by State and non-State representatives regarding the original design of the road section,

9) in giving final Instruction No. 2, which allegedly was an incorrect statement of the law regarding the elements and facts required of Edgman to sustain his burden of proof,

10) in giving final Instructions Nos. 13 and 14 regarding the State's duties to construct and maintain its highways,

11) in giving final Instructions Nos. 16, 17, 18 and 19, which allegedly imposed strict liability upon the State for the violation of certain statutes,

12) in failing to deliver the State's tendered Instruction No. 2, which instruction limited the State's liability to only those persons who themselves were using ordinary care,

13) in refusing to give the State's tendered Instructions Nos. 4 and 9, which asserted that the State is not an insurer for accidents incurred on the State's highways,

14) in refusing to give the State's tendered Instruction No. 5, which recited certain statutory provisions concerning speed of vehicles in order to impose negligence upon the other driver, Casillas,

15) in refusing the State's tendered Instruction No. 6, which advised against engaging in speculation as to the proximate cause of the accident,

16) in refusing the State's tendered Instruction No. 8 regarding the finding of proximate cause,

17) in refusing to give the State's tendered Instructions Nos. 11, 12 and 13, all of which were in excess of the number of tendered instructions (10) permitted by Ind. Rules of Procedure, Trial Rule 51(D).

## FACTS

On the night of July 27, 1970, James Edgman and his wife Lorene were driving south on Cline Avenue bordering Gary and Hammond. They were traveling at approximately 35 to 40 miles per hour in the outermost of the two southbound lanes. A vehicle driven by Robert Casillas approached at approximately 40 to 60 miles per hour in the outside northbound lane. At the "S" curve on Cline Avenue, for reasons that have never been clearly established, Casillas lost control of his automobile as he approached the Grand Calumet River Bridge in the middle of the curve. His car crossed both northbound lanes, struck and crossed the six-inch, four-feet wide concrete median curb, traversed both southbound lanes, and collided with the Edgman vehicle. Testimony elicited at trial established the following conditions at the Cline Avenue "S" curve, the crash-site: no lighting, no striping along outer edges of lanes, no lane markings, a series of defectively designed vertical curves followed by a defectively designed and hidden horizontal curve, no signs warning of said curves, no speed limit signs, and no median barrier. As a result of the crash, Casillas and Lorene Edgman died, and James Edgman suffered multiple injuries including brain damage, a broken left hip (surgically replaced), a fractured knee, fractures in the chest and an elbow, and a 60–82.5% hearing loss in both ears. The jury awarded Edgman a total of $1.8 million dollars in damages, having found the State negligent, and the State appeals.[1]

*Issue One—Change of Venue*

The State contends the trial court's denial of its motion for change of venue was contrary to law and acted to substantially prejudice the State by denying its right to an unbiased jury. The State's motion, filed September 7, 1979 (nine years after the filing of the complaint and three months before the scheduled trial), was founded on the following allegations:

1. The Cline Avenue expressway, which was the site of the 1970 accident, had been improved in 1973 by the addition of lights and a median concrete barrier wall—facts which would be known to prospective Lake County jurors who had traveled on the expressway to and from work during that period of time. This knowledge, according to the State, would frustrate the evidentiary rule barring evidence of subsequent repairs and improvements.

2. Though some of the prospective jurors might not have previously used the section of the expressway, several would most probably be required to do so in traveling to and from the courtroom.

3. Prospective jurors would have been exposed to adverse publicity regarding Cline Avenue expressway and accidents on its "S" curve.

4. A substantial number of venireman would likely be employed or have family members employed at Inland Steel and would be biased in favor of Edgman because of:

 (a) familiarity with Cline Avenue and knowledge of changes since the date of the accident, or

 (b) identification with the Edgmans or the other driver involved in the accident, all of whom were employed at Inland Steel at the time of the accident.

Additionally, the motion alleged the State was unable to explore the veniremen's use of the expressway section in voir dire because, by such questioning, it would have invited the jury's attention to the very mat-

---

1. Further facts will be introduced as they become pertinent to a particular issue.

ter the State wished to avoid and would have waived any error with respect to such matter. The State later amended the motion to add that it first became aware of the bias of Inland Steel employees on or about August 31, 1979, when it interviewed several witnesses. The amendment recited such bias continued to develop over the years and was not necessarily present in 1971 when the case was filed.

██ We find the trial court did not err in denying the State's motion. Because the motion was not made within ten days after the issues were first closed on the merits, such motion was subject to the late filing provisions of Ind. Rules of Procedure, Trial Rule 76(8). The rule instructs:

> "Provided, however, if the moving party first obtains knowledge of the grounds for change of venue from the county or judge after the time above limited, he may file said application, which must be verified personally by the party himself, *specifically alleging* when the cause was first discovered, how discovered, the facts showing the grounds for a change, and *why such cause could not have been discovered before by the exercise of due diligence.* Any opposing party shall have the right to file counter-affidavits on such issue within ten [10] days, and the ruling of the court may be reviewed only for abuse of discretion." (Emphasis added.)

A careful examination of the pertinent pleadings reveals the State offered no explanation why the cause for venue change alleged in its motion could not have been discovered before September 7, 1979, by the exercise of due diligence. We note the accident involved herein occurred in 1970, the Edgman complaint was filed in 1971, and the remedial highway construction was performed in 1973. The long period of time between these earlier events and the State's 1979 motion, when coupled with the State's

failure to offer any explanation why it could not have previously discovered possible jury bias, leads us to conclude there was no abuse of discretion on the part of the trial court.[2]

*Issue Two—Jurors Challenged for Cause*

██ The State next asserts the trial court improperly overruled its challenges for cause of six veniremen who indicated they were familiar with Cline Avenue after 1970. Such familiarity, argues the State, discloses the prospective jurors were knowledgeable of the changes made in the roadway in 1973, and would therefore "automatically form an opinion that the State was negligent" (Appellant's Brief, p. 10). Further, the State contends these veniremen would view the State's repairs on the road as an admission of negligence on its part.

Of the six veniremen complained of, three (Knight, Bryant and Davis) did not serve on the jury. The three remaining (Cichy, Kausenfleck, and Kish) were questioned regarding the Cline Avenue expressway. Cichy and Hausenfleck said they had formed no opinion as to the safety of the road, and Cichy stated he had no prejudice against Cline Avenue. Kish indicated he had formed an opinion on Cline Avenue but could put any bias aside in deciding the case. Thus, the record does not establish grounds for removing the jurors for cause. *See Irvin v. Dowd,* (1961) 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751. Even assuming the prospective jurors were familiar with the changes made in 1973,[3] they either had no opinion or said they would put any bias aside. Further in this regard, we note that the mere fact that changes are made in a highway, a process which seems to be an ongoing one throughout this jurisdiction, would not automatically lead one to conclude, as the State contends, that the changes were an admission of a prior negligent condition.

---

**2.** We find nothing in the record or in the State's brief which shows it brought the possible bias to the judge's attention during the number of pre-trial conferences, the last of which occurred August 6, 1979.

**3.** An examination of the record reveals that while Jurors Cichy and Kish both indicated they had driven on Cline Avenue since about 1968, Juror Kausenfleck stated he had been driving on Cline Avenue only since 1976.

Our review of the record reveals that the State did not use all of the peremptory challenges available to it in the case. With regard to Juror Kish, we note that while he indicated he had formed somewhat of an opinion about the safety and design of Cline Avenue, he was never questioned as to whether that opinion was positive or negative. However, even assuming the opinion he held was a bias against the State, the State still held two peremptory challenges which it could have used to remove him from the panel. Our supreme court has repeatedly held that failure to use all peremptory challenges acts as a waiver of any alleged error arising from the trial court's denial of a challenge for cause and renders such error harmless. *Hopkins v. State,* (1981) Ind., 429 N.E.2d 631; *Foresta v. State,* (1980) Ind., 413 N.E.2d 889; *Monserrate v. State,* (1976) 265 Ind. 153, 352 N.E.2d 721.

*Issue Three—Denial of State's Motion for Summary Judgment*

The State alleges the trial court erred in overruling its motion for summary judgment. This motion asserted there were no issues of material fact and Edgman would not prevail because he could not establish the State's negligence was the proximate cause of the accident inasmuch as Casillas' conduct intervened. We were displeased to discover· the State, in its brief, failed, among other things, to set forth any citations to the record regarding this motion.[4] After diligent search we found the State indeed filed for summary judgment on November 21, 1975, and a hearing was held on

December 15, 1976, at which time the trial court took the motion under advisement. However, we did not find any ruling on the motion anywhere in the record before or after Edgman filed his amended complaint on July 25, 1979.

A record filed in an appeal is accorded the imprimatur of absolute verity and is conclusive on us. *Southern Indiana Gas & Electric Co. v. Decker,* (1974) 261 Ind. 527, 307 N.E.2d 51. One cannot assert error on appeal regarding the disposition of a motion when no ruling was made thereon by the trial court. *Falender v. Atkins,* (1911) 178 Ind. 476, 94 N.E. 323; *Richmond Gas Corp. v. Reeves,* (1973) 158 Ind.App. 338, 302 N.E.2d 795; *see also State v. Maplewood Heights Corp.,* (1973) 261 Ind. 305, 302 N.E.2d 782.

Even if the trial court had denied the motion, there would have been no error. The State's conclusory statement there was no "material issue of fact" in this case was untrue, based on the very issues it argued in favor of summary judgment—proximate cause and intervening cause. In a case such as the one now before us, where the events may conceivably be undisputed but the inferences to be drawn therefrom will differ, proximate cause is a question of fact for the jury. *Elder v. Fisher,* (1966) 247 Ind. 598, 217 N.E.2d 847; *School City of Gary v. Claudio,* (1980) Ind.App., 413 N.E.2d 628. The same principle applies to issues of possible intervening causes. *Elder v. Fisher, supra; see generally State v. Thompson,* (1979) Ind.App. 385 N.E.2d 198. In other

---

4. We quote the State's entire argument on this issue:

"Indiana law provides that if the defendant did no more than furnish a condition by which injury is made more possible, and that condition causes an injury by the subsequent independent acts of another, the two conditions are not concurrent, and the existence of the first condition cannot be the proximate cause of the injury. *Wilcox v. Urschel* (1936), 101 Ind.App. 627, 200 N.E. 246 [465]; *Slinkard v. Babb* (1953), 125 Ind.App. 76, 112 N.E.2d 876. However, see *Koroniotis v. La-Porte Transit* (1979), Ind. [App.], 397 N.E.2d 656. It is, nevertheless, the rule that when a defendant's negligence merely creates a con-

dition by which the subsequent injury is made possible, there is *no* proximate cause relationship between the negligence and the injury. *Peck v. Ford Motor Co.* (1979), C.A. Ind., 603 F.2d 1240.

"The arguments and authorities of the prior issues are incorporated into this argument by reference."

It must be incumbent upon such party, under our appellate rule requiring cogent argument, to point out the materials presented to the trial court pursuant to Ind.Rules of Procedure, Trial Rule 56, and, further, to disclose to this court in what· way such materials reveal there is no genuine factual dispute on an issue which is essential to plaintiff's cause.

words, the jury must decide whether the State's negligence caused the accident or whether negligence by Casillas was an intervening factor. Summary judgment is not proper when such genuine issues of material fact exist. Ind. Rules of Procedure, Trial Rule 56(C). Also, such penchant for arriving at differing results from the same facts is more acute in negligence cases where one must measure the parties' conduct against the reasonable man standard, making negligence actions particularly unsuited to summary judgment. *Doe v. Barnett,* (1969) 145 Ind.App. 542, 251 N.E.2d 688. The trial court would not have erred in denying summary judgment.

*Issue Four—Motion for Judgment on the Evidence (Directed Verdict)*

█ The State alleges the trial court erred in refusing to grant its motions pursuant to Ind. Rules of Procedure, Trial Rule 50 for judgment on the evidence (directed verdict). The State made two such motions —first, at the close of the plaintiff's evidence and again at the close of all evidence. We do not consider the first motion, as it was made at the close of Edgman's evidence, after which the State proceeded to introduce further evidence. In presenting evidence, the State waived any alleged error regarding the denial of the first motion. *Smith v. Insurance Co. of North America,* (1980) Ind.App., 411 N.E.2d 638. On appeal, therefore, we consider only those allegations of error pertaining to denial of the State's second motion.

At the close of all the evidence, the State, in an oral motion for directed verdict, argued two theories:

1. The State was only required to use reasonable care in the design, construction and maintenance of its highways, and here, the evidence conclusively showed it used such care and since the State had no legal duty to insure the Edgmans' safety and to protect them from another driver's negligence, it is not liable.

2. Even if the evidence established negligent design, construction, or mainte-

nance, there was no evidence to show such negligence proximately caused the accident.

The trial court overruled this second motion and allowed the case to go to the jury, which action is now challenged as error.

█ The standard used by a trial court in considering a T.R. 50 motion for judgment on the evidence was set forth by our supreme court in *Vernon Fire & Casualty Insurance Co. v. Sharp,* (1976) 264 Ind. 599, 349 N.E.2d 173:

"There are no mystical considerations confronting a trial court faced with such a motion: the interpretation of Ind.R. Tr.P. 50 consistently has been that the motion must be denied where there is *any* evidence or legitimate inference therefrom tending to support at least one of the allegations. Where the evidence is such that the minds of reasonable men might differ, a directed verdict is improper, and the resolution of conflicting evidence is for the jury. *Mamula v. Ford Mtr. Co.* (1971), 150 Ind.App. 179, 275 N.E.2d 849."

*Id.* at 179. *See also Shanks v. A.F.E. Industries, Inc.,* (1981) Ind., 416 N.E.2d 833. In reviewing the denial of the State's motion, this court is bound by the same standard which governs the trial court. *Senco Products, Inc. v. Riley,* (1982) Ind.App., 434 N.E.2d 561. Thus, we look only to the evidence and reasonable inferences drawn therefrom most favorable to the nonmoving party. *Id.; Searcy v. Manganhas,* (1981) Ind.App., 415 N.E.2d 142. From this evidence, we determine whether there was evidence of probative value supporting each element of the plaintiff's claim which would justify submitting the case to the jury. *Craven v. Niagara Machine & Tool Works, Inc.,* (1981) Ind.App., 417 N.E.2d 1165, *rev'd on other grounds on rehearing* (1981) 425 N.E.2d 654. We will overturn a trial court's denial of such motion only where there is a complete failure of proof: that is, where there is no substantial evidence or legitimate inference derived therefrom to support an essential element of the claim. *See Ortho Pharmaceutical Corp. v. Chapman,* (1979) Ind.App., 388 N.E.2d 541, 544.

Our examination of the record in this case convinces us that the evidence and reasonable inferences drawn therefrom, when considered in a light most favorable to Edgman, were sufficient to establish the elements of the claim challenged by the State as not proven. While we do not attempt to particularize the 1936 pages of testimony from Edgman's 27 witnesses, we conclude the traffic control manuals, the photographs, the testimony of users of the highway and of experts Robert Lippman and Dr. Gary Long, both qualified highway construction engineers, and the legitimate inferences to be drawn therefrom provide a sufficient basis for a finding of negligence on the part of the State.

The State argues it was not an insurer of the Edgmans' safety and had no duty to protect them from the gross negligence of another driver. However, it does admit it had a general duty to exercise reasonable care in designing, constructing and maintaining its highways for the safety of public users. *Accord, State v. Clark,* (1978) 175 Ind.App. 358, 371 N.E.2d 1323. Experts Lippman and Long testified that the portion of the Cline Avenue expressway here involved suffered from serious design and operational deficiencies which made it hazardous to use. Additionally, testimony elicited from users of the highway near the time of the accident indicated no speed signs were posted in the area of the "S" curve and the road surface was dirty, scattered with debris and poorly lighted. We conclude evidence supports the inference the State breached its duty of reasonable care.

The State makes an additional argument in this regard. It argues that, even assuming it was negligent, there was insufficient evidence to prove that it proximately caused the accident, taking the position that Casillas' negligence was the sole and only proximate cause of the crash. Based on the record before us, we disagree with this analysis, however, and conclude there was substantial evidence in the record to allow the jury to find that the defective road conditions, rather than negligence on the part of Casillas, caused the accident.

In support of our conclusion, we note the decision of this court, in *State v. Thompson, supra,* where we dealt with a similar proximate cause issue in a case which also involved a claim of negligent highway design. There, as in the instant case, the State contended there was insufficient evidence establishing its actions were the proximate cause of the complained-of crash. The court disagreed, however, and cautioned that a pre-existing passive condition could be the cause of an event if it played a material part in bringing that event about. Observing that factual causation becomes proximate causation under the test of foreseeability, the *Thompson* court quoted with approval the following passage from *Meadowlark Farms Inc. v. Warken,* (1978) 176 Ind.App. 437, 376 N.E.2d 122:

"One's negligence may furnish a mere condition for the incidence of another's negligence and allow the original actor to escape liability. *Schroer v. Funk & Sons, Inc.,* (1968) 142 Ind.App. 223, 233 N.E.2d 680; *Slinkard v. Babb* (1953) 125 Ind.App. 76, 112 N.E.2d 876. If true, such negligence was not the active or efficient cause of the resulting injury. *However, the ultimate test of legal proximate causation is the reasonable foreseeability.* The assertion of an intervening, superseding cause fails to alter this test. *City of Indianapolis v. Falvey,* (1973) [156 Ind. App. 366], 296 N.E.2d 896. For this Court to affirm a positive finding of proximate causation, we need only conclude that the evidence presented supports a reasonable conclusion that the original wrong was one of the proximate rather than remote causes." (Emphasis in original.)

385 N.E.2d at 205, *quoting from Meadowlark Farms, Inc. v. Warken, supra* 176 Ind. App. at 445, 376 N.E.2d at 129.

Returning to the record before us, we find detailed testimony from expert Lippman as to probable causes of the collision, which indicated the facts of this case did not necessarily require a conclusion that Casillas was driving negligently. Lippman

further stated it was his opinion that design and maintenance deficiencies, including the lack of proper road markings and warning signs, were substantial contributing factors to the accident. Thus, the record supports our conclusion that substantial evidence was admitted establishing that the negligence of the State was at least a proximate, non-remote cause of Edgman's injuries.

### Issue Five—Edgman's Expert Engineer—Not Registered in Indiana

■ Edgman's expert witness, Dr. Gary Long, a civil engineer specializing in transportation engineering, was registered in Illinois and Florida but not in Indiana. The State objected to his competency as an expert for his lack of such registration and contended his testimony would be the practice of engineering and in violation of certain state statutes regulating professional engineers. Ind.Code 25–31–1–1 (Necessity of license) (Burns 1982);[5] Ind.Code 25–31–1–2 (Definitions) (Burns 1974);[6] Ind.Code 25–31–1–27 (Practicing without license and other specific violations). This issue has been decided adversely to the State squarely on this same objection. *State v. Willian,* (1981) Ind.App., 423 N.E.2d 668; *State v. Totty,* (1981) Ind.App., 423 N.E.2d 637; *State v. Maudlin,* (1981) Ind.App., 416 N.E.2d 477. Dr. Long, having stated his credentials in education, professional societies, research, teaching positions, publications, awards, and practice, was not incom-

---

5. IC 25–31–1–1 was amended by 1982 Ind. Acts, P.L. 154, § 100.

6. IC 25–31–1–2 was amended by 1981 Ind. Acts, P.L. 222, § 229.

7. In the State's brief on appeal, it suggests that two other items in Myers's report not requested at trial should have been read. These included an indication there were no road defects at the accident site, and an indication that had Casillas lived, he would have been arrested for reckless driving. It is established, however, that issues which were not presented at trial cannot be considered on appeal. *Clarkson v. Department of Insurance,* (1981) Ind.App., 425 N.E.2d 203.

8. Fed.R.Evid. 804(b)(5) instructs:
"Other exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial

---

petent to give expert testimony simply because he was not registered in Indiana.

### Issue Six—Police Accident Report

The trial court refused to admit State's Exhibit 12, a police accident report prepared by Officer Fred Myers, a Gary policeman who died in 1971. The State offered the report during direct examination of Officer Robert Miller, who conducted a follow-up investigation at the hospital but was not present at the accident scene. The State requested the entire report be admitted as evidence or, in the alternative, that Officer Miller be permitted to read the following notations made by Myers on his report, indicating:

1) the speed limit was 55 m.p.h. at the accident site,

2) there were other unspecified lane markings at the accident site, other than center-lane markings,

3) the accident occurred at Cline Avenue and Gary Avenue Overpass, some 1,000 feet north of the site specified by Edgman.[7]

The State argued at trial that the report came within the business record exception to the hearsay rule and was also admissible under Federal Rules of Evidence 804(b)(5).[8] Counsel for Edgman countered with the assertion that the report was inadmissible hearsay. After hearing argument, the court excluded the report itself and refused

---

guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant."

to allow Officer Miller to read from it. On appeal, the State urges this ruling was error, insisting it was prejudiced by the refusal of the evidence in the report.

 We can find no error in the trial court's refusal to make the police report a full exhibit. At the outset, we note that an exclusionary ruling will be upheld if it can be sustained on any grounds, regardless of what arguments were made at trial. *American United Life Ins. v. Peffley,* (1973) 158 Ind.App. 29, 301 N.E.2d 651. Here, it is clear the report was hearsay, that is, written information in an out-of-court statement being offered to prove the truth of the matters contained therein. *Harvey v. State,* (1971) 256 Ind. 473, 269 N.E.2d 759.

██ The State argued the report was admissible under the business record exception to the hearsay rule, which the *Peffley* case defined in the following manner:

"A synthesis of the Indiana cases treating what modern authorities call the 'business record' exception to the hearsay rule is that documentary evidence is admissible if identified by its entrant or one under whose supervision it is kept and shown to be an original or first permanent entry, made in the routine course of business, at or near the time of the recorded transaction, by one having both a duty to so record and personal knowledge of the transaction represented by the entry." (Citations omitted.)

*American United Life Ins. v. Peffley, supra* 158 Ind.App. at 36–37, 301 N.E.2d at 656. However, the accident report fails to meet the requirements of the business record exception.[9] It is undisputed that Officer Myers did not witness the Edgman accident and thus had no first-hand knowledge of the exact place where the cars collided.

The law is clear that the person making the report must have personal knowledge of the events represented therein in order for it to be admitted under the business records exception. *Hebel v. Conrail, Inc.,* (1983) Ind. App., 444 N.E.2d 870. The description of the accident contained in the report states:

"*From officers* [sic] *investigation, apparently* veh # 1 [Casillas] was N. bound on Cline Ave, when at Gary Ave Overpass struck steel guard rail, crossed medium [sic] proceeded N. bound in the S. bound lane, striking veh # 2 [Edgman] which was S. bound on Cline Ave." (Emphasis added.)

We are unable to discern from the record either the source or the authoritativeness of the information contained in the report. Thus, its value rests in part upon the veracity of unidentified sources [10] who may or may not have witnessed the crash and who most certainly were not under a business duty to observe and report the facts of the accident.

While the State relies on *Wells v. State,* (1970) 254 Ind. 608, 261 N.E.2d 865, and *Olson v. State,* (1974) 262 Ind. 329, 315 N.E.2d 697, to support its argument that the report is admissible as a "business record," we find neither of these cases to be helpful to the State's cause. In *Wells,* our supreme court held the trial court erred in admitting a police complaint report which recorded a memorandum of a phone call allegedly made to the police by a business owner to report a breaking and entering of his office building. In discussing the business records exception, the *Wells* court instructed:

"The heart of the rule then is the requirement that the observation, report-

9. Although Officer Miller did not identify himself as the custodian of the record involved herein, a requirement of admission under the business records exception, Edgman's counsel stipulated the report was a true and accurate copy of the record as found in the Gary Police Department files.

10. Listed on the report were Tony Madrinas and Richard Gray as witnesses. Both testified at trial, with Madrinas stating he saw the acci-

dent and describing it and Gray stating he came upon the scene shortly after the accident occurred. The report does not indicate whether Officer Myers' conclusions as to the nature of the accident were based on these two witnesses or other unidentified sources. Further, Officer Miller indicated when eyewitnesses were present, statements were usually taken from them. No such statements were in the file in this case.

ing, and the recording of the facts *all* be made by someone in the regular course of the business. Without this there is no assurance of the accuracy and reliability of the fact which justifies the admission of the record as evidence of the facts asserted therein." (Emphasis in original.) *Wells v. State, supra* 254 Ind. at 616, 261 N.E.2d at 870. The court held the report inadmissible to prove either the identity of the caller or the occurrence of the breaking and entering, cautioning that the officer had no personal knowledge of either fact. In its decision, it relied on a New York case, which, as shown by the description set forth in *Wells,* contained facts remarkably similar to the case at bar:

"This decision is in line with the leading case of *Johnson v. Lutz* (1930) 253 N.Y. 124, 170 N.E. 517, where the court held that a memorandum concerning an accident prepared by a police officer who wasn't present at the time of the accident and which memo was based on statements made to him by persons present when he arrived was inadmissible as evidence of the facts asserted in the memo about the accident. The person operating in the regular course of business did not have first hand knowledge of the facts and the persons who did have first hand knowledge of the facts were not observing and reporting these in the regular course of business."

*Wells v. State, supra* 254 Ind. at 617, 261 N.E.2d at 871. The facts of the *Olson* case were similar to those of *Wells* in that once again, the disputed evidence was a complaint report chronicling a telephone call made to police. The *Olson* court, following *Wells,* ruled the information in the report was hearsay and therefore inadmissible.

Returning to the facts of the case at bar, it is clear that while Officer Myers was under a business duty to make such report, he did not personally view the accident. Further, any persons who might have had personal knowledge thereof were not reporting within the regular course of business. Thus, under the logic of *Wells, Johnson,* and *Olson* the report was not admissi-

ble in its entirety because significant information contained therein was not based on the personal observation of the preparer of the report. Therefore, the report was not within the business records exception to the hearsay rule.

Nor was there any error in refusing admission of the report by analogy to Federal Rule of Evidence 804(b)(5). That rule instructs where the declarant is unavailable and a hearsay statement having guarantees of trustworthiness is 1) offered as evidence of a material fact, and 2) is more probative than any other evidence the proponent can procure through reasonable efforts, the court can admit such statement to serve the interests of justice. This is similar to a hearsay exception examined by this court in *American United Life Ins. v. Peffley, supra.* The *Peffley* court recognized that hearsay not falling within a traditionally recognized exception might be considered as having probative value "if the offering party demonstrates circumstantial probability of trustworthiness and necessity." *Id.* at 658. However, this view was specifically rejected by our supreme court in *C.T.S. Corp. v. Schoulton,* (1978) 270 Ind. 34, 383 N.E.2d 293. The accident report was therefore not admissible by analogy to the federal rule relied upon by the State.

Having thus determined the trial court correctly barred the use of the entire exhibit, we next discuss the propriety of the court's refusal to allow Officer Miller to read excerpts from the report. These excerpts concerned the speed limit and the lane markings on Cline Avenue and Officer Myer's description of how and where the accident occurred. We conclude the trial court committed no error in refusing to allow Miller to read these statements into evidence.

First, we observe from our examination of the record that the first and second items of proffered testimony (regarding the speed limit and lane markings on Cline Avenue) were identical to testimony of State's witness, Charles A. Szczerbik, a Gary police officer who had investigated

an accident on the same stretch of roadway within 20 days of the Edgman crash. The State recognizes the excluded testimony was covered by other testimony when it observes in its brief that speed limit evidence contained in the accident report "would have corroborated defendant's other evidence." (Appellant's brief p. 10). Reversible error cannot be predicated upon a trial court's admission or exclusion of evidence which is merely cumulative. *Loudermilk v. Feld Truck Leasing Co. of Indiana,* (1976) 171 Ind.App. 498, 358 N.E.2d 160; *Rocoff v. Lancella,* (1969) 145 Ind.App. 440, 251 N.E.2d 582. Accordingly, the State has shown no error in the court's refusal to admit either the speed limit or the lane marking evidence contained in the report.

Nor did the trial court err in excluding evidence in the report relating details as to the location of the accident. This information, unlike notations in the report such as lane markings, was not based on his personal observation. Officer Myers's narrative description of the accident represents either statements given to him by witnesses and bystanders and/or conclusions and opinions he formed from his observation of the position of automobiles on the roadway, debris, etc. In any event, the information is inadmissible. In the former instance, the information is rejected as "double hearsay," since its value depends upon the veracity of an observer who did not have the business duty of transmitting such information. *See Wells v. State, supra.* In the latter instance, the information is barred because it represents the opinion and conclusions of the investigating officer. *Dale v. Trent,* (1970) 146 Ind.App. 412, 256 N.E.2d 402; *State v. St. Anne Brick & Tile Co.,* (1968) 142 Ind.App. 338, 234 N.E.2d 664; *Lee v. Dickerson,* (1962) 133 Ind.App. 542, 183 N.E.2d 615. *See also Presser v. Shull,* (1962) 133 Ind.App. 553, 181 N.E.2d 247. Therefore, the State's assertions are insufficient to predicate error in this regard.

*Issue Seven—Denial of Mistrial*

The State next urges it was error for the trial court to deny its request for mistrial which was based upon the following exchange which occurred during direct examination of plaintiff's witness, Robert M. Mitchell:

"Q. Let me ask you this: Was there any name that people in this Community have for that area of Cline Avenue?

A. At that time you mean?

Q. Yes, did it have a nickname or name people used to refer to?

A. Well, of course, when it was first up there, when it was first built there was no particular name for it. Later on, after it had been in operation I suppose three or four years they occasionally referred to it as a killer highway because accidents began to occur."

The State moved for mistrial on the basis that characterization of the roadway as a "killer highway" was prejudicial to the State and violated a motion in limine which prohibited opinions and conclusions by non-expert witnesses.

We observe that the State made no objection to the question asked of witness Mitchell before the offending answer was given. This failure to raise a timely objection has been held to be a waiver of the issue on appeal. *Vacendak v. State,* (1982) Ind., 431 N.E.2d 100; *Tinnin v. State,* (1981) Ind., 416 N.E.2d 116. While our courts have recognized an exception to this waiver rule where the objectionable answer could not have been anticipated (i.e. where an objectionable answer is given to an unobjectionable question) *Johnson v. State,* (1982) Ind., 432 N.E.2d 1358, here we feel it was apparent that an unfavorable response could have been anticipated.[11] Our examination of the record here reveals the State did not request the objectionable testimony be stricken nor did it ask that the jury be instructed to disregard the remark. This is the appropriate course of action when im-

---

11. First, we observe the question was objectionable as irrelevant. Further, in a sidebar discussion outside the jury's presence, counsel for the State admitted he expected the witness's response.

proper testimony is volunteered in response to an otherwise proper question. *Kraft v. Himsel Stock Yards,* (1957) 127 Ind.App. 238, 139 N.E.2d 569. The State's failure to request either corrective measure waives any claimed error in this regard. *Id.; Spence v. Downham,* (1967) 140 Ind.App. 385, 223 N.E.2d 587.

*Issue Eight—Design Recommendation*

 The State next urges it was error for the trial court to admit documents evidencing recommendations and suggestions made by both State and non-State representatives before the 1964 design approval of the highway.[12]

At argument held in chambers prior to the introduction of the exhibits, the State objected to the documents, contending the exhibits were being introduced for the purpose of proving notice to the State of defective design, and arguing they were irrelevant for that purpose because they related to the preliminary rather than final stages of the design process. Further, the State urged it should not be bound by these early recommendations made during the preliminary stages of the design process, claiming such evidence was harmful and prejudicial to its case. On appeal, the State repeats these arguments, without citation to supporting legal authority.

 We conclude the evidence of unadopted design proposals was evidence indicating the State's knowledge of defects in the original design of the Cline Avenue Expressway. It is established that duty to use due care is based upon an actor's actual or imputed knowledge of danger. *See Snyder v. Mouser,* (1971) 149 Ind.App. 334, 272 N.E.2d 627. Evidence that the State was warned of potential danger prior to the accident is admissible to show such knowledge. *Alexandria Mining Co. v. Irish,* (1896) 16 Ind.App. 534, 44 N.E. 680.

Furthermore, this court has recognized the admissibility of unadopted design proposals in highway design cases on several

occasions. In *State v. Thompson, supra,* this court relied on evidence of preliminary design proposals in deciding whether there was sufficient evidence to prove negligent highway design was the proximate cause of plaintiff's injuries. We stated:

"Finally, in connection with the plaintiff's allegation that the State was negligent in its design of the area in question, we note the fact that considerable testimony was directed to the proposition that the truck driver could not 'store' or 'shadow' his trailer in the crossover when he pulled out of the truck stop. Significantly, when Amoco first designed the exit/entrance in question in its application for a permit, Amoco's design called for the construction of a new, obliquely-angled crossover which would have stored completely the length of the tractor and trailer in the present case. That design was rejected by the State, and the eventual location of the exit/entrance was immediately across from an existing, right-angled median crossover. Additionally, this exit/entrance was placed further into the curve in accordance with the State's suggestions.

Again, we do not wish to dictate to the State which measures mentioned *supra* it should have employed to meet its duty of reasonable care under the circumstances. However, we hold that evidence of the State's failure to attempt any of these remedies, other than in a half-hearted manner, was sufficient evidence from which the jury could find that the State had breached its duty, and that this breach was the proximate cause of Thompson's injuries."

*State v. Thompson, supra,* at 208. In *State v. Clark, supra,* another negligence action claiming improper highway design, this court noted in its discussion of the facts that evidence at trial had revealed the State had rejected proposed design modifications proposed by its engineering consultant. Here, the evidence presented by Edgman in the instant case is indistinguishable

---

12. The objection to these documents was made by pre-trial motion in limine and preserved by objection at trial.

from that introduced in both *Thompson* and *Clark*. Accordingly, the State has shown no error in this regard.

*Issue Nine—Instructions Regarding Negligence*

The State contends the trial court erred in giving final Instruction No. 2, which states in pertinent part:

"The Plaintiff has the burden of proving the following propositions: That with respect to the Cline Avenue S-Curve the Plaintiff contends that the State was negligent in that:

1. The road was not designed or built with proper sight distances for the design speed of 70 mph.

2. The road was not designed or built with proper sight distances at the allegedly posted speed of 55 mph.

. . . . .

4. The State negligently failed to install median barriers on the small median curb in the center of the road prior to the Edgman crash.

5. The State negligently failed to install lighting on the road prior to the Edgman crash.

6. The State negligently failed to post any turn arrow, curve, S-Curve or any other warning sign whatsoever on the road.

. . . . .

10. The State negligently failed to place reflectors or delineators on the outer edge of the road.

. . . . .

12. The State failed to establish proper administrative procedures as required by law to discover and analyze accident reports to enable them to discover and correct this unsafe and dangerous area of road within reasonable time.

If you find from consideration of all the evidence
FIRST:
That the plaintiffs have proven one or more of the above propositions; and
SECOND:

That the plaintiffs were injured; and
THIRD:
That the proven proposition or propositions considered together were a negligent act or omission of the defendant which was a proximate cause of the injury of the plaintiffs;
Then your verdict should be for the plaintiffs.
However, if you find from a consideration of all the evidence that either
FIRST:
That plaintiffs have failed to prove any of the propositions, or
SECOND:
That the proven proposition or propositions considered together do not constitute a negligent act or omission of the defendant or that such were not a proximate cause of the injury of the plaintiffs,
Then your verdict should be for the defendant."

The State takes exception to Paragraphs 1, 2, 4, 5, 6, 10, and 12 of this instruction. Its contentions are, briefly:

1) Paragraphs 1 and 2 (discussing sight distances) are irrelevant to this cause because sight distance is necessarily defined as the distance between a vehicle and an object in the same lane. The accident here, argues the State, did not involve Casillas' confrontation with an object in his lane of travel but instead involved his striking the median curb, a fixed, parallel object.

2) Paragraphs 4 and 5 (discussing installation of median barriers and lighting) are objectionable because the State is under no duty to prevent all accidents and thus has no legal duty to install either barriers or lighting.

3) Paragraphs 6 and 10 (discussing placement of warning signs and outer-edge demarcation) are objectionable because such measures were discretionary.

4) Paragraph 12 (discussing failure to perform required analysis of accident reports in order to discover roadway dangers) is incorrect because failure to

use proper administrative procedures cannot constitute a cause of action and, further, the issue is irrelevant to the instant case.

 At the outset of our analysis, we state the applicable law that a party is entitled to an instruction based upon his own theory of the case so long as its substance is within the issues formed by the pleadings and is supported by the evidence produced at trial. *State v. Maudlin, supra; Whitaker v. St. Joseph's Hospital,* (1981) Ind.App., 415 N.E.2d 737.[13] In essence, all of the State's objections to Instruction No. 2 focus on whether it properly sets forth theories of negligence which are supported by the issues and evidence at trial. With the State's general position in mind, we now examine each of the disputed portions of the instruction.

 *Sight Distances*—The State contends the term "sight distance" refers to the viewing range which should be allowed a driver to enable him to stop upon seeing an object *in his own lane.* It argues that

> "[t]o permit the jury to find defendant negligent because of improper sight distance when the accident did not involve Casillas' striking another object in his lane of travel was to permit the jury to find negligence 'in the air,' which had no relevance whatever to the facts of the case."

(Appellant's Brief, p. 31). We do not understand the logic of the State's objection in this regard. It seems to argue that the accident must involve a collision with an object in the driver's lane of travel in order to predicate negligence on the part of the State in designing improper sight distances. In effect and reality, the design defect usually causes the traveler to leave his lane and impact in another lane. The objection is therefore illogical and misleading in that it attempts to limit the sight distance stan-

dard to those types of occurrences wherein the driver occasions impact in his own traveling lane.

The evidence adduced at trial indicates a broader interpretation of the term than promoted by the State, however. Edgman's expert Lippman defined "minimum stopping sight distance" as "the distance a motorist needs in order to stop when he perceives something in front of him." Edgman's expert Long testified as to several components of stopping sight distance and indicated that it was "the absolute minimum distance ... that must be provided to a driver such that he can make a decision if he has to bring his vehicle to a halt or take any other action that's necessary." Neither Lippman nor Long presented the narrow definition of sight distance proffered by the State. Under their definitions, sight distance could have indeed been relevant to the type of accident involved here.

*Median Barriers, Lighting*—The State, at trial, objected to Paragraphs 4 and 5, which discuss installation of median barriers and lighting, on the sole basis that it was under "no legal duty" either to construct median barriers or to install lighting. It reaffirms this argument on appeal without any citation to legal authorities or to portions of the record supporting this assertion.

 Indiana law instructs that a sufficiently detailed objection must be made to the giving of an instruction in order to prevent waiver. *Wiles v. Mahan,* (1980) Ind.App., 405 N.E.2d 591. *Peoples Bank & Trust Co. v. Stock,* (1979) Ind.App., 392 N.E.2d 505. The State's bare assertion it had no legal duty is insufficient. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

 Further, while the State refers us to a prior argument in its brief which discusses a statutory prohibition against constructing centerline devices higher than six

---

**13.** Of course, we are guided throughout this opinion, in ruling on the propriety or impropriety of the giving of instructions, by the oft-stated guidelines (1) does the instruction correctly state the law? (2) is there evidence within the record to support the giving of the instruction? (3) is the subject of the tendered instruction

adequately covered by other instructions which were given? *Davis v. State,* (1976) 265 Ind. 476, 355 N.E.2d 836; *Shelby Federal Savings & Loan Assoc. v. Doss,* (1982) Ind.App., 431 N.E.2d 493, 501. Also, it is elementary that objections to instructions not made at trial cannot be raised for the first time on appeal.

inches, we note this statute was not raised as grounds for objection to this instruction at trial. On appeal, we cannot consider an objection different to that which was raised at trial. *Dominguez v. Gallmeyer,* (1980) Ind.App., 402 N.E.2d 1295; *Travelers Insurance Co. v. R. & W. Transportation, Inc.,* (1972) 152 Ind.App. 164, 282 N.E.2d 554.

 Further, we find that the State's bare assertion that it had "no legal duty" in regard to median barriers and lighting to be without merit. Case law imposes a duty upon the State to exercise reasonable care in constructing, designing and maintaining its highways for the safety of public users. *State v. Thompson, supra; State v. Clark, supra.* In a given factual situation, the duty of reasonable care may include the installation of median barriers and lighting.

 *Signs, Reflectors*—The State objects to Paragraphs 6 and 10, which discuss warning signs and outer-edge reflectors or delineators, claiming the placement of such objects was discretionary on the State's part and that the giving of such instructions allowed jurors to speculate they were required. We first comment that the State's arguments on these elements suffer from the same deficiencies that we observed in the prior arguments on median barriers and lighting. Again, there is no citation to authority or to pertinent portions of the record to support the State's claim of error. While the State refers this court to the Indiana Manual on Uniform Traffic Control Devices, it does not tell us what portion of the record contains this manual. We are not required to search the nearly 5,000 pages of record to reverse the trial court holding. Ind.Rules of Procedure, Appellate Rule 8.2(B)(5); *Lutheran Hospital of Fort Wayne, Inc. v. Department of Public Welfare,* (1979) Ind.App., 397 N.E.2d 638.

 Further, we disagree with the State in its analysis of the impact of this instruction. The language therein does not imply the State was required to install signs and reflectors but reveals negligence may have occurred in the failure to install such devices. The jury was left with the determination whether the failure to install was negligence. In any event, Edgman's expert Lippman testified he was familiar with the manual and indicated warning signs were mandatory when engineering studies showed their necessity. He opined that warning signs were indeed necessary at the time and place of the accident. Additionally, Edgman's expert Long testified warning signs were required for Horizontal Curve No. 1. Our examination of the record reveals that substantial testimony was also introduced regarding the placement of reflectors or delineators on the outer edge of the roadway. Lippman testified the 1968 Manual on Uniform Traffic Control devices made striping of the outer road's edge mandatory, and that failure to stripe this outer-edge line would signal a lack of due care. Long testified the 1968 Manual provided the authoritative standard for marking, painting and signing a state road. He noted that painting on the road's outer edge was mandatory under the Manual's guidelines and indicated absence of the painted lines would be inconsistent with the exercise of due care. Later in his testimony, he stated the Manual required the use of paint which contained small glass beads to make it highly reflective. In summary, Long and Lippman's testimony furnishes substantial evidentiary support for Paragraphs 6 and 10 of the negligence instruction given here.

 *Analysis of Accident Reports*—The State next attacks Paragraph 12 of the instruction concerning the establishment of proper administrative procedures to analyze accident reports. The state asserts 1) failure to use proper administrative procedures does not constitute actionable negligence and 2) the instruction is irrelevant here. Its argument on this point, again without appropriate citation to legal authority or to the record, is waived. A.R. 8.3(A)(7).

 Furthermore, we note Edgman points to Ind.Code 9–6–3–1 and Ind.Code 9–6–3–2 to support the giving of this instruction. The provisions state:

"The department of safety shall collect, compile, interpret and publish statistics

and information relative to motor-vehicle accidents on the public highways of this state, and where it seems that there is undue hazard causing accidents it shall be the duty of the head of such department to call the same to the attention of the proper local or state officials and enlist their cooperation in overcoming or removing said hazard so far as is practical. (IC 9–6–3–1)

"Whenever the statistics as collected and compiled under the provisions of this act shall disclose that any street or highway or any condition therein constitutes a hazard to the traveling public, the head of the department of safety or his duly authorized agent, shall present such facts to the proper authority having charge of such street or highway and *it shall be the duty of such authority to effect such changes in such street or highway as may be necessary to remove or eliminate such hazard.*" (Emphasis added.) (IC 9–6–3–2)

Negligence may arise from the violation of a duty imposed by statute. *Bixenman v. Hall,* (1968) 251 Ind. 527, 242 N.E.2d 837; *State Department of Natural Resources v. Morgan,* (1982) Ind.App., 432 N.E.2d 59. Edgman introduced evidence that the State kept no specific accident statistics regarding roads of similar classification to the Cline Avenue expressway. Therefore even if the State had not waived this issue, we would have been constrained to conclude the instruction was proper here.

*Issue Ten—Final Instructions on State's Duty of Care*

▬▬ The State claims final Instructions Nos. 13 and 14 were incomplete, incorrect, and misleading. They read as follows:

 13. "The State has a general duty to exercise reasonable care in the design, construction and maintenance of its highways for the safety of public users.

 14. "The State has a duty to use ordinary care to keep its roads in a reasonably safe condition."

**14.** IC 9–4–1–30, 9–4–2–1, and 9–4–1–31(a)

We believe the State's position is incorrect. Instruction No. 13 is an exact rendition of the State's standard of care as we defined it in *Elliott v. State,* (1976) 168 Ind.App. 210, 342 N.E.2d 674; *accord, State v. Thompson, supra.* As for Instruction No. 14, it reflects substantially the same law as No. 13 except it is narrowed to apply only to maintenance. This is also a facsimile of the law as we have pronounced it in *Ewald v. City of South Bend,* (1938) 104 Ind.App. 679, 12 N.E.2d 995 (duty of municipalities); *accord, City of Indianapolis v. Swanson,* (1982) Ind. App., 436 N.E.2d 1179, *transfer pending.* We find no error in these instructions.

*Issue Eleven—Final Instructions Nos. 16, 17, 18 and 19*

▬▬ The State contends the trial court erred in reading final Instructions Nos. 16, 17, 18 and 19 because they imposed negligence per se if certain statutes were violated. These four instructions embodied six statutes in force at the time of the accident —Ind.Code 9–4–1–30 (Burns 1980) (State highway commission to adopt sign manual); Ind.Code 9–4–2–1 (Burns 1980) (Adherence to sign manual required); Ind.Code 9–4–1–31(a) (Burns 1980) (State highway commission to sign all state highways); [14] Ind.Code 8–13–4–5 (Burns 1973) (Curves and intersections—Illumination—Cost—Payments) (repealed Acts 1980, P.L. 74, § 434); Ind. Code 9–6–3–1 (Hazards; notice to local officials); Ind.Code 9–6–3–2 (Elimination of hazards). At the end of each of the four instructions, the trial court recited the following:

 "If you find from a preponderance of the evidence that the defendant failed to comply with this statute on the occasion in question, such conduct *could* constitute evidence of negligence on the part of the defendant." (Emphasis added.)

In support of its argument that these instructions were mandatory in form, it refers us to *Davison v. Williams,* (1968) 251 Ind. 448, 242 N.E.2d 101, regarding mandatory instructions on violations of highway safety regulations. In that case, our supreme court declared,

were all amended in 1980.

" 'A mandatory instruction is one which unequivocally charges the jury that if they find from a preponderance of the evidence that a certain set of facts exists, they *must* render a verdict in accordance therewith either for the plaintiff or defendant.' 2 Wiltrout, Indiana Practice, § 1400(8), p. 344 (1967)" (Emphasis added.)

242 N.E.2d at 103. We fail to see how the four disputed instructions can be described as "mandatory" when each one clearly made any decision regarding negligence discretionary—"such conduct *could* constitute evidence of negligence." Thus, we perceive no valid argument in the State's brief.

*Issue Twelve—State's Instruction on Standard of Care*

 The trial court refused to deliver the second part of the State's tendered Instruction No. 2, which part reads as follows:

"The standards [sic] of care with which the State is chargeable in designing its roadways is stated as follows:

'The State of Indiana has the duty to use ordinary care to design roadways which are reasonably safe for those persons traveling on such roadways who themselves are using ordinary care.' "

The State asserts error. There was none.

The above is an imprecise, if not a totally incorrect, explication of the State's standard of care. Without resort to analysis of the instruction's specific problems,[15] we observe the trial court did read the following to the jury:

13. "The State has a general duty to exercise reasonable care in the *design,*

construction and maintenance of its highways for the safety of public users." (Emphasis added.)

This is a verbatim rendition of the proper standard of care as pronounced by this court in *Elliott v. State, supra. Accord, State v. Thompson, supra.* And where the trial court has delivered another instruction propounding the same matter, correctly stating the law, there is no error in the court's refusal to read the tendered instruction. *LaSalle Motor Car Sales, Inc. v. Calumet National Bank,* (1982) Ind.App., 440 N.E.2d 9.

*Issue Thirteen—Instructions Regarding Liability*

 The State next challenges the trial court's refusal to give the following tendered Instructions Nos. 4 and 9:

4. "The mere happening of an accident on a public highway, even when it results in death and injury, creates no presumption of liability against the State. The State is not an insurer. The State has a duty to design, construct and maintain its highways in a reasonably safe condition, in accordance with the terrain encountered and traffic conditions to be reasonably apprehended. But even so, a certain risk is unavoidable. Roads cannot always be straight and level, and curves with descending grades are always potentially dangerous. A highway may be said to be reasonably safe when people who exercise ordinary care can and do travel over it safely."

9. "The State of Indiana is not an insurer of the safety of persons who travel on

---

**15.** It is not entirely clear what the State meant by the phrase "for those persons traveling on such roadways who themselves are using ordinary care." It asserts in its brief that this instruction absolves the State from absolute liability. Besides the fact this argument is waived for lack of citation to authority supporting it, A.R. 8.3(A)(7), we note no other court instructions, in fact, imposed absolute liability on the State.

The phrase may also be an awkward way of describing the reasonable man standard. This matter was actually addressed to the jury in final Instructions Nos. 8 and 11. Those along

with the standard of care instruction, adequately covered the tendered instruction, thereby justifying the court's refusal to read it. *LaSalle Motor Car Sales, Inc. v. Calumet National Bank,* (1982) Ind.App., 440 N.E.2d 9.

Lastly, the phrase may have referred to contributory negligence, in which case, the instruction was properly refused for setting forth more than one legal precept (negligence and contributory negligence) in one instruction, in violation of Ind.Rules of Procedure, Trial Rule 51(D). And, the trial court did, in fact, instruct on contributory negligence in final Instructions Nos. 9 and 10.

its highways. That is, simply because a person who receives injuries while traveling upon a public highway does not, standing alone, entitle those persons or their legal representatives in the even of death to recover damages from the State of Indiana [sic]."

The principles that the State has a general duty of reasonable care in the design, construction and maintenance of its highways and that there is no presumption of liability upon the happening of an accident were all given in final Instructions Nos. 13, 14 and 27, which stated:

13. "The State has a general duty to exercise reasonable care in the design, construction and maintenance of its highways for the safety of public users.

14. "The State has a duty to use ordinary care to keep its roads in a reasonably safe condition.

27. "The mere happening of an accident on a public highway, even when it results in death and injury, creates no presumption of liability against the State."

Next, we note the State's argument in regard to the refusal to give its instructions is comprised of a sole paragraph in its brief, which states:

"An instruction must be relevant to the issues and this requirement is not necessarily satisfied by a mere correct statement of the law. *Hotz v. Gelsthorpe* (1979), Ind. [App.], 387 N.E.2d 78. All of the cases and authorities contained in Issues III and IV are incorporated herein by reference."

Issues III and IV contain generally an argument as to why the court erred in not granting a motion for judgment on the evidence. Assuming the State may, in asserting particular error, incorporate other sections of its appellate brief, such incorporated argument should contain

"the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and con-

tentions in support thereof relate to the particular facts of the case under review."

A.R. 8.3(A)(7). Otherwise, the issue is waived. *Weenig v. Wood,* (1976) 169 Ind. App. 413, 349 N.E.2d 235. An examination of the State's arguments in Issues III and IV of its brief with respect to the directed verdict reveals only general authority for the propositions, which, as noted previously, were already delivered to the jury in Instructions 13, 14 and 27. Accordingly, the State has waived any claimed error regarding the refusal of these instructions.

*Issue Fourteen—State's Tendered Instructions on Speeding*

The next predicated error in this case is whether the trial court erred in refusing to give the following State's instruction:

5. "At all times here involved there was in full force and effect a statute of the State of Indiana reading, in part, as follows:

'(a) No person shall drive a vehicle on [a] highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. . . .'

\* \* \* \* \* \*

'(c) The driver of every vehicle shall[,] consistent with the requirements in paragraph (a), drive at an appropriate reduced . . . when approaching and going around a curve. . . .'

If you find from a preponderance of the evidence that this statute was violated on the occasion in question by Robert Casillas, without excuse or justification, such conduct would constitute negligence as a matter of law." [Ind.Code 9–4–1–57 (Burns 1973)]

The State has totally failed to cite us to any evidence within the record (of Casillas' speed) which it claims as support for giving this instruction. By its failure to supply us with a basic element necessary for our consideration in determining if an instruction has been improperly refused—evidence in

the record to support the giving of the instruction [16]—it has neglected to detail its argument in compliance with A.R. 8.3(A)(7). Regardless, the trial court did deliver the following final instructions:

26. "If you find from all the evidence that the sole proximate cause of the accident in question was the manner in which Robert Casillas operated his motor vehicle, then the plaintiff cannot recover from defendant, State of Indiana, either damages for his own injuries or for the death of Lorene Edgman."

29. "It is the duty of every driver of a motor vehicle using a public highway to exercise the care an ordinarily prudent person would use, under the same or like circumstances, and the failure to exercise such care constitutes negligence."

Our supreme court has recently declared that an instruction substantially similar to final Instruction No. 29 conveys to the jury the essential subject matter (excessive speed) located in IC 9–4–1–57. *Thornton v. Pender,* (1978) 268 Ind. 540, 377 N.E.2d 613.[17] And an instruction is properly refused when one that is issued contains the same substance. *Id.* In this case, the language of final Instructions Nos. 26 and 29 places Casillas's possible negligence in issue. In fact, final Instruction No. 29 entertains a much broader scope of Casillas's behavior than just speeding, to the State's possible benefit.

*Issue Fifteen—State's Tendered Instruction No. 6*

The State requested the following instruction be given:

6. "You are instructed that the mere fact that an accident occurred is no evidence or proof that the defendant, State of Indiana, was negligent. If the evidence is of such a nature that you are required to guess or speculate as to who, if anyone, was negligent, or as to whose negligence, if any, proximately caused the accident, then the plaintiff has failed to prove his case by a preponderance of the evidence and you must find against the plaintiff and for the defendant."

It was not given, and the State alleges error. The State is incorrect.

This instruction contains two legal propositions: 1) the mere fact an accident occurred is not proof the State was negligent; and 2) if one must guess as to the negligent party or the proximate cause of the accident, the verdict must be for the State because Edgman failed to prove his case. The proposed instruction thus violates the mandate of T.R. 51(D) which provides, "[e]ach tendered instruction shall be confined to one [1] relevant legal principle." The State's tendered instruction No. 2 was properly refused. *See Stults v. State,* (1975) 166 Ind.App. 461, 336 N.E.2d 669; *Phegley v. Huffman,* (1971) 149 Ind.App. 100, 271 N.E.2d 201.[18]

---

16. *See Dahlberg v. Ogle,* (1978) 268 Ind. 30, 373 N.E.2d 159; *LaSalle Motor Car Sales v. Calumet National Bank, supra.*

17. The instruction at issue in the supreme court was:

" 'You are instructed that a motorist has a duty to keep his motor vehicle under reasonable control while operating said motor vehicle upon a public highway.' "

*Thornton v. Pender, supra* 268 Ind. at 556, 377 N.E.2d at 623.

18. Even if a multi-issue instruction were acceptable, this instruction was properly refused. The first legal concept, regarding mere evidence of an accident as not being proof of negligence, is correct, but it was substantially covered by final Instruction No. 27:

"The mere happening of an accident on a public highway, even when it results in death

and injury, creates no presumption of liability against the State."

On the other hand, the second half of the instruction is an incorrect, or at the very least confusing, statement of the law. The instruction urges the jury to find for the State if it must speculate as to the negligence of any one because such speculation indicates Edgman did not carry its burden of proof. This statement misallocates the burden of proof on the contributory negligence issue by instructing the jury Edgman was responsible for negating any contributory negligence on his part. The law in Indiana clearly places the burden of proving contributory negligence on the defendant. *Memorial Hospital of South Bend, Inc. v. Scott,* (1973) 261 Ind. 27, 300 N.E.2d 50. Thus, the second part of the State's tendered instruction No. 6 was properly refused as an incorrect statement of the law, *see LaSalle Motor Car Sales, Inc. v. Calumet National Bank, supra,* or,

*Issue Sixteen—Instruction on Proximate Cause*

 The State tendered the following instruction on proximate cause which the trial court refused to deliver:

8. "The existence of a defect or unsafe condition in a highway, in and of itself, does not render defendant, State of Indiana, liable. To render defendant liable you must find that such defect or unsafe condition was a proximate cause of the accident and damages complained of."

The trial court did, however, instruct the jury as follows:

28. "Even if you find that the State of Indiana was negligent in failing to exercise reasonable care in the design and/or construction and/or maintenance of Cline Avenue, unless you further find that such negligence was a proximate cause of the injuries and damages suffered by plaintiff James Edgman, your verdict should be for the State of Indiana."

The trial court did not err. The instruction it did deliver charges the jury to consider the same legal precepts as the State's tendered instruction. The instruction that was given was unassailable. *Gregory v. State,* (1980) Ind., 412 N.E.2d 744; *Eagle Motor Lines, Inc. v. Galloway,* (1981) Ind. App., 426 N.E.2d 1322.

*Issue Seventeen—State's Instructions Nos. 11, 12, and 13*

 Lastly, the State claims the trial court erroneously refused to read to the jury its tendered final Instructions numbered 11, 12 and 13. The record reveals the State tendered fifteen instructions numbered 1–15 consecutively. Under the clear language of T.R. 51(D) the State was limited to the tender of ten instructions, and "[n]o party shall be entitled to predicate error upon the refusal of a trial court to give any tendered instruction in excess of the number fixed by this rule or the num-

ber fixed by the court order, whichever is greater." *Id.* The State has not shown us the trial court fixed a number greater than ten, that it abused its discretion in failing to do so, or that the State even requested such. The State therefore cannot claim error for the court's refusal to give its instructions Nos. 11, 12, and 13 as such instructions exceeded the number permitted by T.R. 51(D). *Southern, School Buildings, Inc. v. Loew Electric, Inc.,* (1980) Ind.App., 407 N.E.2d 240; *Cochrane v. Lovett,* (1975) 166 Ind.App. 684, 337 N.E.2d 565.[19]

Affirmed.

YOUNG, P.J., and CONOVER, J., concur.

---

at the very least, as very confusing. *See Brewer v. State,* (1969) 253 Ind. 154, 252 N.E.2d 429.

**19.** We observe the trial court did indeed give at least one instruction beyond the proffered first ten. (Compare final Instruction No. 32, with Defendant's tendered Instruction No. 15).

However, such instruction is deemed an instruction of the court and does not entitle the State to complain about the *refusal* to give those others in excess of ten. *See Hobby Shops, Inc. v. Drudy,* (1974) 161 Ind.App. 699, 317 N.E.2d 473.